Catherine FLAHERTY; Brian Flaherty; Michael R. Norton; Kevin J. Leonard; Maureen M. Leonard; Robert T. Marshall; Jane L. Marshall; Michael J. Sheehan; John F. Sheehan; Barbara A. Sheehan; Frederick J. Sheehan, Sr.; Claire M. Sheehan; and Frederick J. Sheehan, Jr.,

v.

BAYBANK MERRIMACK VALLEY, N.A.; Baybank Middlesex; Baybank South; Gary J. Kravetz; Audrey Lahti Kravetz; Phyllis Kravetz; Kravetz Realty Investments, Inc.; Patriot Real Estate Development Corporation; and

---

Richard G. Asoian, Mark E. Tully, Robert W. Lavoie and Aaron A. Gilman, d/b/a Asoian & Tully; Arlene M. Keating; John L. Connell, Jr. and Mary C. Connell, d/b/a Connell and Connell; and Gerald H. Popkin.

Civ. A. No. 91–11516–Z.

United States District Court,
D. Massachusetts.

Sept. 23, 1992.

Jonathan Braverman, Rivkind & Baker, P.C., Braintree, MA, for plaintiffs.

John Jacob Kuzinevich, Riemer & Braunstein, Boston, MA, for Baybank Merrimack Valley, N.A., Baybank Middlesex and Baybank South.

Edward Ginn, Kline, Gordon & Ginn, Paul K. Flavin, Boston, MA, for University Mort. Corp.

Paul K. Flavin, Morrison, Mahoney & Miller, Treazure R. Johnson, Anthony M. Moccia, Eckert, Seamans, Cherin & Mellott, Boston, MA, Edward T. Robinson, Robinson & Berger, Wellesley, MA, for Bank For Savings.

Harvey Gertel, Newton Upper Falls, MA, for Loudon Road Development Corp.

Dennis Edward Harrington, Harrington, LaPointe & Masterson, Quincy, MA, for Gary J. Kravetz and Audrey Lahti Kravetz.

Gary J. Kravetz, pro se.

Audrey Lahti Kravetz, pro se.

Jean M. Kelley, Morrison, Mahoney & Miller, Boston, MA, for Phyllis Kravetz.

Dennis Edward Harrington, Harrington, LaPointe & Masterson, Quincy, MA, Gary J. Kravetz, Danvers, MA, for defendants.

John F. Tierney, Lora M. McSherry, Tierney, Kalis, Adamopoulos & Lucas, Salem, MA, for Patriot Real Estate Development Corp.

Allen N. David, Peabody & Arnold, Boston, MA, for Richard G. Asoian, Mark E. Tully, Richard G. LaVoie, Aaron A. Gilman and Arlene M. Keating.

David J. Hart, Hart & Lamond, Robert L. Burke, Callan, Sullivan & Burke, P.C., Lowell, MA, for John L. Connell, Jr. and Mary C. Connell.

George A. Berman, Erik Lund, Thomas P. Fredell, Posternak, Blankstein & Lund, Boston, MA, Lawrence J. DiGiammarino, Antonucci & DiGiammarino, Malden, MA, for defendants.

Harvey Gertel, Newton Upper Falls, MA, for STE Development Corp. and Charles Street Development Corp.

A. Van C. Lanckton, Craig & Macauley, Boston, MA, for F.D.I.C.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Thirteen individuals, related either by blood, marriage, or close friendship, invested in a number of condominium units hoping to cash in on the real estate boom of the mid–1980s. Unfortunately, the real estate tides turned in the late 1980s, and the investments went sour. Alleging numerous violations of state and federal law,[1] the plaintiffs have brought suit against everyone involved in the transactions—the developers of the units, the brokers, the mortgagee banks, and the closing attorneys. Pending before this Court are several dispositive motions filed by defendants.

1. The plaintiffs have since dismissed voluntarily the RICO count, the only federal count, but this Court has chosen to retain jurisdiction pursuant to 28 U.S.C. § 1367(a) (1988).

The following facts are undisputed unless otherwise noted. Audrey L. Kravetz, a licensed real estate broker and now also an attorney, worked for a long period of time in the offices of plaintiff Frederick J. Sheehan, Sr. ("Attorney Sheehan").[2] Because of the close working environment in the offices, Audrey Kravetz came to know other employees of Attorney Sheehan, including plaintiff Jane Marshall, his long-time secretary and paralegal, and Barbara Sheehan, his employee and sister-in-law. Attorney Sheehan has been a practicing attorney for forty years. Although he concentrated on wills, trusts and estate planning and administration, Attorney Sheehan has for a period of five years represented approximately three mortgagees per month in real estate closings.

In April 1987, Audrey Kravetz purchased for investment purposes two condominium units at Pemberton Estates Condominiums in Dracut, Massachusetts. After learning of her investment, Attorney Sheehan, his secretary Jane Marshall, and her daughter Maureen Leonard each decided to purchase a unit.[3] This was not Attorney Sheehan's first venture into the real estate market. He had previously purchased three other properties for investment purposes.

A few months later, Audrey Kravetz purchased another investment unit at Carriage Hill Estates in Amesbury, Massachusetts. Soon afterward, Attorney Sheehan, his son Michael Sheehan, Jane Marshall, and Maureen Leonard each purchased a unit at Car-

riage Hill.[4] In October 1987, Audrey Kravetz informed Attorney Sheehan and others[5] of investment possibilities at Concord Green Condominiums in Concord, New Hampshire. In late January and early February 1988, Attorney Sheehan, Frederick Sheehan, Jr., John and Barbara Sheehan, Jane Marshall, Michael Norton, Brian Flaherty, and Catherine Flaherty each closed on a Concord Green unit.[6] Audrey Kravetz received approximately $50,000 in commissions from sales of all of the units.

The plaintiffs used a number of different banks to finance the various transactions. They hoped to hold the units for one or two years at most and then sell at a profit. However, the market declined, they were unable to sell, and the banks called for payment on the loans. Plaintiffs responded by bringing suit against the banks, the brokers, the developers, and the closing attorneys. They allege that all participated in a massive scheme to defraud them into purchasing overvalued condominium units.

*The Closing Attorneys*

Plaintiffs have sued each of the closing attorneys involved in the seventeen separate transactions.[7] The crux of the allegations against the attorneys is that they failed to disclose to plaintiffs on the settlement sheets the true value of the units and plaintiffs' actual equity positions in the units, that they misstated the monies actually paid at closing by plaintiffs, and that they sanctioned other irregularities in the

2. It is unclear from the record whether and to what extent Audrey Kravetz actually worked *for* Attorney Sheehan. It appears that during some of the time period, she worked for another attorney who simply shared office space with Attorney Sheehan.

3. The Pemberton Estates units purchased by Jane L. Marshall and Robert T. Marshall, and Maureen M. Leonard and Kevin J. Leonard closed on September 9, 1987. Attorney Sheehan's purchase at Pemberton Estates is not a part of this lawsuit.

4. The Carriage Hill units closed on September 1, 1987 for Jane L. Marshall and Robert T. Marshall, and Kevin J. Leonard and Maureen M. Leonard; and on September 3, 1987 for Michael J. Sheehan, Frederick J. Sheehan, Sr. and Claire M. Sheehan.

5. Audrey Kravetz claims to have spoken only with Attorney Sheehan, Jane Marshall and Barbara Sheehan about the Concord Green units.

6. To complete the family history: Frederick J. Sheehan, Jr. is the son of Attorney Sheehan; John F. Sheehan is the brother of Attorney Sheehan; Michael R. Norton is the husband of Margaret Sheehan Norton, and a long-time family friend of Michael Sheehan; Brian Flaherty is a nephew of Attorney Sheehan; and Catherine Flaherty is the sister of Attorney Sheehan.

7. The defendant closing attorneys are: Phyllis Kravetz; Richard G. Asoian, Mark E. Tully, Robert W. Lavoie, Aaron A. Gilman, d/b/a Asoian & Tully; Arlene M. Keating; John L. Connell, Jr. and Mary C. Connell, d/b/a Connell and Connell; and Gerald H. Popkin.

transactions. Plaintiffs claim fraud, negligence and violations of various state consumer statutes.[8] Each attorney has moved to dismiss or for summary judgment on all counts.

The attorneys' liability for fraud[9] and negligence necessarily depends on whether they owed a duty to the plaintiffs. *See Royal Business Group, Inc. v. Realist, Inc.,* 933 F.2d 1056, 1064 (1st Cir.1991) (under Massachusetts law, "there can be no actionable claim of fraud for failure to disclose in the absence of a duty to disclose"); *Zeller v. Cantu,* 395 Mass. 76, 478 N.E.2d 930, 935 n. 8 (1985). Plaintiffs assert two theories giving rise to such a duty.

First, they argue that an "implied" attorney-client relationship existed between the plaintiffs and their respective closing attorneys. An attorney-client relationship need not be express between parties. Such a relationship may be implied " 'when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance....' " *DeVaux v. American Home Assurance Co.,* 387 Mass. 814, 444 N.E.2d 355, 357 (1983) (quoting *Kurtenbach v. TeKippe,* 260 N.W.2d 53, 56 (Iowa 1977)). The third element may, in appropriate cases, " 'be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney,

aware of such reliance, does nothing to negate it.' " *Id.*

The record, viewed in the light most favorable to the plaintiffs, does not show that an implied attorney-client relationship existed between plaintiffs and their respective closing attorneys. There is no dispute that the attorneys were hired by the lender banks to represent the banks at the closings. Although plaintiffs did pay the attorneys' fees, as is customary in the industry, they do not allege that in doing so they believed that they were thereby hiring these attorneys to serve them at the closing.

Furthermore, the actions of neither the plaintiffs nor the attorneys at the closing show any intention to create such a relationship. For the most part, the first and only time that the closing attorneys met the various plaintiffs was the day of the closing. The attorneys presented and explained the documents and facilitated the closing. Plaintiffs never questioned the attorneys regarding any of the figures in the closing documents, including the ones they now challenge, and simply signed where told. They claim, nonetheless, to have relied on the attorneys to assure them that the transaction was proper and that the closing documents were accurate.

Based on this record, no implied attorney-client relationship existed. "To imply an attorney-client relationship ... the law requires more than an individual's subjective, unspoken belief that the person with whom he is dealing, who happens to be *a*

---

**8.** Specifically, as can best be deciphered from the Complaint, the counts which apply to all of the closing attorneys are, Count I (fraud), Count II (negligent misrepresentation), Count V (attorney negligence), Count VI (vicarious liability for the actions of their principals, the lender banks), and Count X (Mass.Gen.L. ch. 93A, §§ 2, 11 (1990)).

Additionally, plaintiffs allege violations of New Hampshire consumer statutes (Count XII, New Hampshire Condominium Act, N.H.Rev. Stat.Ann. § 356–B (1984); and Count XIV, New Hampshire Consumer Protection Act, N.H.Rev. Stat.Ann. § 358–A (1984)) against Asoian & Tully and Phyllis Kravetz for closings which they performed on units located in New Hampshire.

**9.** Plaintiffs allege primarily failures to disclose material facts on behalf of the attorneys, and

not affirmative misrepresentations. To the extent that plaintiffs assert that the "falsified" HUD statements constitute affirmative misrepresentations by the attorneys, however, their argument fails as any reliance on such documents is patently unreasonable. Plaintiffs claim that the HUD statements misstated the money actually paid by them at the closing. Plaintiffs, however, signed the HUD statements attesting to the accuracy of such representations, knowing full well whether and what amounts of money they paid at the closing. Therefore, to state that they then relied on such documents is not reasonable as a matter of law. *See Liberty Leather Corp. v. Callum,* 653 F.2d 694, 699 (1st Cir.1981).

lawyer, has become *his* lawyer." *Shein-kopf v. Stone,* 927 F.2d 1259, 1265 (1st Cir.1991). The attorneys clearly represented the banks. The plaintiffs failed to communicate, either by words or actions, that they were relying on these attorneys to serve their interests.[10] As a matter of law, any reliance on the attorneys was patently unreasonable.[11] Plaintiffs' alleged reliance was also unreasonable given that the attorneys would have faced probable conflicts of interest had they represented both parties. *See Page v. Frazier,* 388 Mass. 55, 445 N.E.2d 148, 153 (1983).

■ Plaintiffs next argue that the lawyers owed them a duty based on the doctrine of "foreseeable reliance." An attorney may be liable to a non-client where the attorney knows that the non-client is relying on his or her services in a given transaction. *Page v. Frazier,* 388 Mass. 55, 445 N.E.2d 148, 154 (1983); *see also Norman v. Brown, Todd & Heyburn,* 693 F.Supp. 1259, 1265 (D.Mass.1988). The factors which support a finding of foreseeable reliance are the same as those giving rise to an implied attorney-client relationship. *Page,* 388 Mass. 55, 445 N.E.2d at 154 n. 11. Again, because plaintiffs' alleged reliance on the banks' attorneys was unreasonable as a matter of law, it does not give rise to a duty under the theory of foreseeable reliance.

Because the defendant attorneys owed no duty to plaintiffs and plaintiff's reliance was unreasonable as a matter of law, the attorneys are not liable under either a fraud or negligence theory. Accordingly, the motion for summary judgment is allowed as to all defendant attorneys on Counts I, II, V and IX.

In addition, plaintiffs have articulated no conduct on the part of the attorneys supporting their 93A or New Hampshire statutory claims; thus, summary judgment is appropriate on Counts X, XII and XIV.[12]

Finally, summary judgment is allowed on Count VI because plaintiffs have offered no legal support for their "respondeat inferior" theory that the attorney agents are somehow vicariously liable for the tortious acts of their principals.

*The Kravetz*

The plaintiffs allege that Audrey Lahti Kravetz, a licensed real estate broker, Gary Kravetz, her husband, and Kravetz Realty Investments, Inc., ("KRI") (all three designated as "the Kravetz" by the plaintiffs) committed various torts and violations of state statutes by misrepresenting material facts concerning the condominium investments.[13] The Kravetz have moved to dismiss all counts against them, or, in the alternative, for summary judgment.

■ First, the motion for summary judgment is allowed on all counts with respect

---

**10.** It is undisputed that the figures in the closing documents were entirely consistent with the deal as they understood it. Plaintiffs cannot now argue that they reasonably relied on the attorneys, mere facilitators of the deal, the terms of which had already been agreed upon by the parties, to disclose to them any irregularities in the transaction. The fact that they may have been "lulled into a false sense of security" had more to do with their eagerness to cash in on the deal than with the actions of the closing attorneys.

**11.** This is particularly true for Attorney Sheehan who has represented banks in many real estate closings through his own law practice.

**12.** The two counts brought under the New Hampshire statutes are also barred by the two-year statute of limitations because none of the fraud alleged was undiscoverable by plaintiffs. *See* N.H.Rev.Stat.Ann. § 356–B:65(VI) (1984)

("A person may not recover under this section in any action commenced more than 2 years from the date the purchaser knew or should have known of the existence of his cause of action...."); N.H.Rev.Stat.Ann. § 358–A:3(IV-a) (1984) ("Transactions entered into more than 2 years prior to the complaint" are exempt from the provisions of this chapter); *see also Friedman v. Jablonski,* 371 Mass. 482, 358 N.E.2d 994, 997 (1976).

**13.** As best as can be discerned from the Second-Amended Complaint, the following counts involve the Kravetz: Count I (fraud); Count II (negligent misrepresentation); Count IX (fraudulent inducement); Count X (Mass.Gen.L. ch. 93A, §§ 2, 11 (1990)); Count XII (New Hampshire Condominium Act, N.H.Rev.Stat.Ann. § 356–B (1984)); Count XIII (breach of warranty); and Count XIV (New Hampshire Consumer Protection Act, N.H.Rev.Stat.Ann. § 358–A (1984)).

to defendant Gary Kravetz. In order to forestall summary judgment, plaintiffs must show a disputed issue of material fact that can only be resolved by a finder of fact. *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). Gary Kravetz testified by affidavit that he made no representations to any of the plaintiffs regarding their condominium purchases, and plaintiffs have offered no evidence otherwise. Although in the Second–Amended Complaint plaintiffs attribute a variety of representations regarding the condominium deals to the Kravetz as a whole, it has become apparent through plaintiffs' own memoranda and accompanying affidavits that plaintiffs cite only Audrey Kravetz as the source of these alleged misrepresentations. Nor have plaintiffs offered any evidence of an agency or other relationship which would subject Gary Kravetz to liability for Audrey Kravetz's actions. Accordingly, summary judgment is appropriate.

With respect to the suit against Audrey Kravetz and KRI, the claims are based entirely upon ten representations which she allegedly made to plaintiffs to induce them to purchase the units.[14] I have grouped the representations in order to aid the analysis.

1. The values of the subject units were at least equal to the contract selling prices of the units and were not inflated; and

2. The units were in great demand in the rental and sales market and could be sold at a profit after one to two years of ownership, thereby rendering

unimportant the terms of the financing.

■ Representations 1 and 2 are not actionable as they involve predictions and opinions about a real estate market which by definition is unpredictable. Representations which provide the basis of fraud or misrepresentation claims must be statements of fact, meaning that they are susceptible of actual knowledge. *Zimmerman v. Kent*, 31 Mass.App.Ct. 72, 575 N.E.2d 70, 75 (1991); *see also Yerid v. Mason*, 341 Mass. 527, 170 N.E.2d 718, 720 (1960).[15]

Representation 1 reflects Audrey Kravetz's opinion regarding the market value of the condominium units. "It has long been settled that false statements concerning the market value of property are held to be matters of opinion, judgment, or seller's talk, and do not afford any ground for a claim of damages...." *Gaucher v. Solomon*, 279 Mass. 296, 181 N.E. 238, 239 (1932). Representation 2 predicts the possible future return on the condominium investments and the risk involved. Such predictions are not susceptible of actual knowledge by anyone, even an experienced real estate broker, and therefore constitute mere opinion which cannot support a cause of action.[16]

4. The number of available units was very limited and that plaintiffs must immediately commit to purchase the units available or risk losing this "opportunity."

---

14. I rely on the list of alleged misrepresentations as it appears in plaintiffs' memorandum in opposition to this motion rather than those enumerated in the Complaint, as I assume that the later submission more accurately reflects plaintiffs' case.

15. Misrepresentations about the future may be actionable in the rare case where the speaker has significantly greater knowledge concerning the matter. *See Cellucci v. Sun Oil Co.*, 2 Mass. App.Ct. 722, 320 N.E.2d 919, 924 (1974) (citing Williston, *Contracts*, § 1496, pp. 373–74 (3d ed. 1970) (defendant's statement that the home office would approve the deal constituted actionable fraud)), *aff'd*, 368 Mass. 811, 331 N.E.2d 813 (1975). Plaintiffs have not shown that this narrow exception applies in this case.

16. Plaintiffs' reliance on *Briggs v. Carol Cars, Inc.*, 407 Mass. 391, 553 N.E.2d 930, 933 (1990), is inapposite. In *Briggs*, the Court found that where the defendant car salesman stated that the car was in "good condition," it was reasonable for the buyer to infer that the salesman knew facts to justify that opinion. In the instant case, Audrey Kravetz was discussing future events in the real estate industry. Absent a showing that she possessed a crystal ball, plaintiffs could not have reasonably interpreted such statements to imply that she had a factual basis from which to predict future return on investment in the real estate market.

■ Representation 4 is clearly seller's puffing and is not actionable. *See Tagliente v. Himmer*, 949 F.2d 1, 5 (1st Cir.1991) ("[I]t is not uncommon practice among real estate sellers, and indeed among sellers in general, to boast, and exaggerate the demand for their goods, or the unique value of it.").

5. Rental cash flow would be guaranteed and subsidized by the developers; and

6. No out-of-pocket expense would be necessary to carry the units during the first year.

■ Representations 5 and 6 cannot support a claim for any fraudulent misconduct or misrepresentation because the statements were true. In their memorandum and affidavits submitted in opposition to this motion, plaintiffs concede that they indeed received the rental subsidies from the developers. In fact, in opposing the statute of limitations defense argued by the defendants, plaintiffs assert that they were unable to discover the fraud until a year after the closings because the rental subsidies made it unnecessary to question the value of the deal for that first year. They cannot now claim that such statements were false.

3. The plaintiffs were receiving ten (10%) percent "instant equity" in the Concord Green, Carriage Hill and Charles Condominium units as a result of discounts granted by the sellers; and

7. The units were being marketed as a total package which included pre-approved "special deal" financing from BayBank and the other lenders.

■ Representations 3 and 7 fare no better. Plaintiffs were fully informed with respect to these matters prior to and at the closing and thus had the opportunity to assess their truth or falsity. Plaintiffs signed documents at the closing which indicated the amounts of the first and second mortgages. Additionally, they knew whether and in what amounts they made payments to the sellers at closing. They were thus equipped to calculate their equity in the units. Similarly plaintiffs should have known at the time of the closing whether their lenders had offered any "pre-approved special deal financing." Any reliance on these representations of Audrey Kravetz was therefore unreasonable as a matter of law. *See Liberty Leather Corp.*, 653 F.2d at 699 (where plaintiff aware of facts that undercut original assurances, continued reliance on such assurances unreasonable as a matter of law).[17]

8. The use of "as is" credits and "closing cost adjustments" was the customary and accepted manner to effectuate this type of transaction.

■ Plaintiffs cannot proceed on this representation as it appears for the first time in their opposition to summary judgment without any affidavit or other evidence establishing that such a representation was made to any of the plaintiffs by any defendant.

10. The units purchased were no risk/no lose investments as a result of plaintiffs' "instant equity" in the units which they received through discounts, credits and/or adjustments paid by the developers, the one-year rental subsidies paid by the developers and the plaintiffs' resulting ability to sell the units at a profit after a one or two year holding period.

To the extent that representation 10 is simply a conglomeration of the other nonactionable representations, it too fails to provide a basis for a cause of action under the same analyses. Furthermore, the statement that an investment was "no risk/no lose" is clearly puffing and thus any reliance on this statement would be unreasonable as a matter of law. *See Tagliente*, 949 F.2d at 5.

9. The common areas at Concord Green would be renovated and improved.

■ Representation 9 reflects the developers' present intent with respect to fu-

---

**17.** Furthermore, there is undisputed evidence in the record that BayBank did indeed offer a "special deal" for the purchasers of these units, involving reduced application and attorneys' fees.

ture renovations of the condominium development. As such, it is susceptible of proof and thus may form the basis of a fraud or misrepresentation claim. *Barrett Assocs. v. Aronson*, 346 Mass. 150, 190 N.E.2d 867, 868 (1963).

Audrey Kravetz has denied making any representations regarding renovations at Concord Green or any other development to any of the plaintiffs. Plaintiffs have submitted only two affidavits which refute Ms. Kravetz's testimony, those of Jane Marshall and Michael Sheehan. Because these affidavits do not make specific reference to the common areas at Concord Green, they are simply inadequate to raise a material issue of disputed fact.

In sum, Audrey Kravetz's and KRI's motion for summary judgment is granted on Counts I, II and IX. Summary judgment is also granted on Counts X, XII and XIV.[18] Finally, the motion for summary judgment is granted against all plaintiffs on Count XIII, as they have failed to adduce any evidence to support a breach of warranty claim against Audrey Kravetz or KRI.

*BayBank*

Plaintiffs have also brought suit against BayBank South, as successor in interest to BayBank Norfolk, and BayBank Middlesex, as itself and as successor in interest to BayBank Merrimack Valley, (hereinafter "BayBank" will refer to both BayBank South and BayBank Middlesex), lenders for fourteen of the condominium units. Plaintiffs assert that BayBank participated in the fraudulent condominium scheme alleging fraud, negligent misrepresentation, negligence in failing to conform to prevailing lending standards, vicarious liability for wrongful acts of their agents, breach of implied covenant of good faith, and violations of chapter 93A and similar New Hampshire statutes. BayBank has moved for summary judgment on all counts.

Plaintiffs claim under various counts that BayBank committed fraud, both directly and indirectly through its purported agent Audrey Kravetz. First they argue that BayBank itself committed fraud by failing to disclose to them the "fraudulent scheme of the developers" of which BayBank had knowledge. Had BayBank done so, plaintiffs maintain, they would not have gone through with their closings.

Failure to disclose is not actionable fraud in the absence of a duty to disclose. *Nei v. Burley*, 388 Mass. 307, 446 N.E.2d 674, 676 (1983). Plaintiffs appear to allege some type of fiduciary relationship between BayBank and themselves giving rise to such a duty. Traditionally, Massachusetts courts have viewed a bank's relationship to its customers simply as one of creditor and debtor, a relationship which imposes no duty to counsel or make disclosures to the customer. *See, e.g., National Shawmut Bank v. Hallett*, 322 Mass. 596, 78 N.E.2d 624, 628 (1948). Furthermore, one party cannot unilaterally transform a business relationship into a fiduciary relationship by reposing trust and confidence in another. *Broomfield v. Kosow*, 349 Mass. 749, 212 N.E.2d 556, 560 (1965); *see also Comstock v. Livingston*, 210 Mass. 581, 97 N.E. 106 (1912).

Plaintiffs have adduced no evidence to suggest a fiduciary relationship between themselves and BayBank. It is undisputed that plaintiffs neither sought nor received any advice from BayBank regarding these condominium purchases. The record is devoid of evidence that the transactions at issue were anything more than simple arms-length loans, or that BayBank exceeded a normal lender's role. Based on these facts, as a matter of law, no relationship of trust and confidence existed between plaintiffs and BayBank that

---

**18.** Summary judgment is allowed against these plaintiffs on Count X as no reasonable jury could find the alleged misrepresentations "to be so deceptive to rise to the level of rascality required to establish a 93A claim." *Tagliente*, 949 F.2d at 7–8 (false statements of opinion cannot constitute a deceptive act under chapter 93A).

Summary judgment is granted against these plaintiffs on Counts XII and XIV because the wrongdoing alleged was not undiscoverable and therefore is barred by the two-year statute of limitations. *See* note 12 *supra*.

would impose upon the bank a duty to seek out the plaintiffs and disclose material information relating to the condominium transactions.[19]

██ Plaintiffs also claim that BayBank is liable for the fraudulent acts of its purported agent Audrey Kravetz, based on a theory of apparent authority. *See Restatement (Second) Agency* § 258(b) (1958). Apparent authority " 'results from conduct by the principal which causes a third person *reasonably* to believe that a particular person ... has authority to enter into negotiations or to make representations as his agent.' " *Hudson v. Massachusetts Property Ins. Underwriting Ass'n*, 386 Mass. 450, 436 N.E.2d 155, 159 (1982) (quoting W.A. Seavey, *Agency* § 8D, at 13 (1964)) (emphasis added).

In support of their theory, plaintiffs offer the following. BayBank provided Audrey Kravetz with blank mortgage applications and received from her numerous completed applications. Ms. Kravetz acted as the exclusive liaison with the borrowers with respect to obtaining and submitting the necessary information for the underwriting process. In addition, BayBank allowed her to select the closing attorneys for the various transactions and to have her mother-in-law placed on the list of approved closing attorneys. Finally, Bay-

Bank itself never attempted to meet directly with the borrowers.[20]

Even assuming for the purposes of this motion that all these allegations are true, they evidence no conduct chargeable to the bank that would lead a reasonable person to believe that Audrey Kravetz was acting with BayBank's authority in making the alleged misrepresentations to plaintiffs regarding the various condominium investments. To the extent that BayBank's allowing Audrey Kravetz to select closing attorneys on the various transactions might give rise to a reasonable belief on the part of the plaintiffs that BayBank gave her some authority with respect to certain decisions surrounding the loan process, a representation by Ms. Kravetz regarding the condominium units would clearly fall outside the scope of that apparent authority.[21] Moreover, Audrey Kravetz's representations are not, as noted above, themselves actionable. Accordingly, the motion for summary judgment is granted as to BayBank with respect to Counts I, III and IX.

██ Plaintiffs next attempt to hold BayBank liable under two negligence theories.[22] First, relying on *Danca v. Taunton Sav. Bank*, they argue that BayBank negligently misrepresented the values of the condominiums purchased. 385 Mass. 1, 429 N.E.2d 1129, 1133 (1982). Plaintiffs reason

---

19. Nor may plaintiffs rely on case law from outside Massachusetts to save their argument. Even assuming that Massachusetts courts were to adopt the narrow holding of *Richfield Bank & Trust Co. v. Sjogren*, 244 N.W.2d 648, 652 (Minn. 1976), such "special circumstances" do not exist in this case. Unlike *Sjogren*, plaintiffs have adduced no evidence that BayBank had *actual* knowledge of the fraudulent activities of another of its borrowers. Furthermore, the other non-Massachusetts cases cited by plaintiffs simply recognize that in certain circumstances the relationship between a bank and its customer may give rise to a duty of disclosure. Such analysis is no different in substance than the Massachusetts cases which describe the circumstances creating a confidential or fiduciary relationship. *See, e.g., Barnett Bank of West Florida v. Hooper*, 498 So.2d 923, 925 (Fla.1986); *Klein v. First Edina Nat'l Bank*, 293 Minn. 418, 196 N.W.2d 619, 623 (1972).

20. Plaintiffs' other assertion, that BayBank benefitted from spreading and shifting the potential

risk of loss from itself and the developers to the individual unit purchasers, is mere speculation, unsupported by the record.

21. Although it is unclear from their memorandum, plaintiffs also appear to make an implied agency argument based on the same allegations. To the extent plaintiffs make such an argument, it too fails. "The existence of agency can be implied from 'a course of conduct showing that a principal has repeatedly acquiesced therein and adopted acts of the same kind.' " *LaBonte v. White Constr. Co.*, 363 Mass. 41, 292 N.E.2d 352, 355 (1973) (quoting *Hurley v. Ornsteen*, 311 Mass. 477, 42 N.E.2d 273, 276 (1942)). Plaintiffs have offered no evidence of a course of conduct suggesting that the Kravetz's representations regarding the condominium investments were known to or acquiesced in by BayBank.

22. The first theory is asserted under Count II (negligent misrepresentation), and the second under Count IV (negligence in failing to conform with prevailing lending standards).

that the fact that BayBank performed appraisals of the units, and would only agree to lend them an amount equal to 80% of the actual value of the unit, amounted to a misrepresentation that the units were of sufficient value and would fully secure the loans. Second, plaintiffs allege that BayBank breached its duty of due care when it obtained appraisals of the units which did not accurately reflect the real market value of the property. *See Larsen v. United Fed. Sav. & Loan Ass'n*, 300 N.W.2d 281, 287–88 (Iowa 1981).

Both theories require that plaintiffs prove the appraisals obtained by the bank were inaccurate. Plaintiffs have not, however, offered any evidence of any such inaccuracies; they rely instead on unsupported allegations and conclusions.[23] Without evidence of the inaccuracy of the appraisals, plaintiffs cannot assert that the bank's loaning them 80% of the appraised value amounted to a misrepresentation as to the value of the units. Similarly, even if plaintiffs can prove that BayBank was somehow negligent in performing the appraisals, without evidence that the end result was inaccurate, they have no damages. Accordingly, summary judgment is allowed as to both Counts II and IV.[24]

■ In Count VIII, plaintiffs allege that BayBank breached the covenant of good faith and fair dealing implied in every contract by failing to disclose the "improper nature of the transaction" and the possible financial consequences to the plaintiffs. The implied covenant of good faith and fair dealing, however, "pertains to bad faith in the performance of a contract, not in its execution." *Sheehy v. Lipton Indus., Inc.*, 24 Mass.App.Ct. 188, 507 N.E.2d 781, 784

n. 6 (citing *Restatement (Second) of Contracts* § 205, comments a, c (1981)), *rev. denied*, 400 Mass. 1103, 509 N.E.2d 1202 (1987). As plaintiffs allege no bad faith in the performance of their loan contracts with BayBank, but only in actions leading up to the closing of the loans, this count must fail.

In Count VII, plaintiffs assert that BayBank should be vicariously liable for the wrongful actions of the closing attorneys under principles of agency. Because, however, I have previously determined that the closing attorneys owed no duty to the plaintiffs and therefore are not liable for the allegedly wrongful acts, this count too must fail.

Accordingly, BayBank's motion for summary judgment is allowed on Counts I, II, III, IV, VII, VIII and IX. The motion is also granted on Counts X, XII and XIV as BayBank's actions with respect to these plaintiffs do not, as a matter of law, constitute violations of either chapter 93A or the New Hampshire statutes.[25]

*Patriot Real Estate Development Corporation*

■ Finally, plaintiffs have brought suit against Patriot Real Estate Development Corporation ("Patriot"), claiming that the real estate company participated in the scheme to defraud them into buying overvalued condominium units. The wrongs alleged include fraud, negligent misrepresentation, breach of warranty, and violations of Massachusetts and New Hampshire consumer protection statutes.[26] Patriot has moved to dismiss the Second–Amended Complaint, or, in the alternative, for summary judgment on all counts.

---

**23.** I therefore need not decide whether the logic of *Danca*, 429 N.E.2d at 1133, applies to this case, or whether BayBank owes plaintiffs a duty of due care in obtaining appraisals, as held in *Larsen*, 300 N.W.2d at 288.

**24.** Although Count IV in the Complaint alleges several acts of negligence by BayBank, plaintiffs appear in their memorandum to have limited their argument to only the act of appraising.

**25.** The claims under the New Hampshire statutes are barred by the two-year statute of limitations in any event. *See* note 12 *supra*.

**26.** The specific counts against Patriot are: Count I (fraud); Count II (negligent misrepresentation); Count IX (fraudulent inducement); Count X (Mass.Gen.L. ch. 93A, §§ 2, 11 (1990)); Count XII (New Hampshire Condominium Act, N.H.Rev.Stat.Ann. § 356–B (1984)); Count XIII (breach of warranty); and Count XIV (New Hampshire Consumer Protection Act, N.H.Rev. Stat.Ann. § 358–A (1984)).

At the heart of plaintiffs' claims against Patriot is the allegation that Patriot made false representations regarding certain condominium developments, thereby inducing the plaintiffs to purchase. They allege that Audrey Kravetz, acting as Patriot's agent, "conveyed" false information contained in promotional materials prepared by Patriot for Concord Green and Charles Condominium developments. These allegedly false statements included representations that the units were in "excellent" condition, that there was "excellent" potential for appreciation in "secure and profitable" investments, that the deals were "no risk," and that plaintiffs should expect to receive a specified return upon resale. Plaintiffs also allege that Patriot overstated the value of the units.

Even assuming *arguendo* that such statements are actionable, plaintiffs have not shown that they ever received this information from Patriot either directly or through its supposed agent Audrey Kravetz. Patriot, through James I. Harris, its vice president, testified by affidavit that it made no representations or warranties to any of the plaintiffs relating to any of the properties at issue. In response, plaintiffs offer copies of two promotional brochures and a portion of Audrey Kravetz's deposition, in which she testifies that she passed along "whatever written information was provided to me" from the sellers to certain of the plaintiffs. No mention is made in her testimony of any promotional brochures. No specifics are offered regarding the "written information" to which she referred. No evidence is offered to link the "written information" with the brochures prepared by Patriot. In short, the record is devoid of any evidence to show that any information from Patriot was disseminated to the plaintiffs either through Audrey Kravetz or through their brochures. Therefore, summary judgment is appropriate on all counts. *See* Fed.R.Civ.P. 56(e).

Accordingly, the motions for summary judgment of all defendants are allowed. Judgment may be entered for these defendants.

## JUDGMENT

In accordance with the Memorandum of Decision, dated September 23, 1992, summary judgment having been allowed, it is

ORDERED, that judgment be and it is hereby entered for defendants BayBank Merrimack Valley, N.A.; BayBank Middlesex; BayBank South; Gary J. Kravetz; Audrey Lahti Kravetz; Phyllis Kravetz; Kravetz Realty Investments, Inc.; Patriot Real Estate Development Corporation; and Richard G. Asoian, Mark E. Tully, Robert W. LaVoie and Aaron A. Gilman, d/b/a Asoian & Tully; Arlene M. Keating; John L. Connell, Jr. and Mary C. Connell, d/b/a Connell and Connell; and Gerald H. Popkin.