Toomey, J.
Introduction
Plaintiff, New Webster Nursing Home, Inc. (Webster Manor), brings this action against defendants, Attorney Joseph Roy and the law firm of Anastasi, Roy and David, to recover fees for services plaintiff rendered to two residents represented by Attorney Roy. Specifically, plaintiff asserts that Attorney Roy failed to file timely Medicaid applications on behalf of the residents and misrepresented the residents’ eligibility for Medicaid benefits. Plaintiff alleges (1) negligence, (2) breach of fiduciary duty, (3) breach of a third-party beneficiary contract, (4) fraud and (5) violations of G.L.c. 93A.
Defendants now move for summary judgment, contending that because they, as counsel for the residents, owed no duty to plaintiff, a non-client, plaintiff cannot prove an essential element of its claims. For the reasons discussed below, defendants’ motion is allowed in part and denied in part.
BACKGROUND
Plaintiff, Webster Manor, is a nursing home specializing in long-term care. Defendant, Attorney Roy, represents two residents of Webster Manor, Arthur Degon and Louise Garlepp. Lacking sufficient personal assets to pay for their care, Mr. Degon and Ms. Garlepp, through family members, sought the advice and assistance of Attorney Roy in securing long-term Medicaid benefits.
Upon Mr. Degon’s and Ms. Garlepp’s admission to Webster Manor in July of 1992, Paula McManus, Mr. Degon’s stepdaughter, Theresa Degon, Mr. Degon’s wife, and Raymond McEIroy, Ms. Garlepp’s grandson, informed plaintiff that Attorney Roy handled the patients’ financial affairs, including the applications for Medicaid. Carol Singh, administrator for Webster Manor, contacted Attorney Roy who confirmed that Mr. Degon and Ms. Garlepp had retained him to oversee their finances and file their Medicaid applications. Ms. Singh thereafter regularly sent copies of the patients’ bills and correspondence to Attorney Roy. Furthermore, she and other Webster Manor employees repeatedly contacted Roy to ascertain the status of the Medicaid applications.
Ms. Singh contends in her affidavit filed in opposition to defendants’ motion for summary judgment, that, on each occasion when she spoke with Roy, he assured her that there were no problems with the applications. She now asserts that information obtained from Department of Public Welfare (DPW) employees and records suggests that Roy intentionally misrepresented the status of the patients’ applications. She also maintains that Roy failed to file the applications in a timely manner and that he erroneously recorded information on the applications, thereby causing delays in the delivery of benefits and gaps in coverage.
In his affidavit, Attorney Roy responds that, in September of 1992, he filed a timely application on behalf of Mr. Degon. Roy claims that, in the process of transferring Mr. Degon’s application to the Springfield office, DPW misplaced the application. Attorney Roy resubmitted the application in December of 1992. DPW found Mr. Degon ineligible for Medicaid benefits until April of 1993 due to his ownership interest in property now owned by Degon’s children.
Attorney Roy asserts that he became involved in the application process for Ms. Garlepp in August of 1992. A social worker at Hubbard Regional Hospital previously filed an application for Ms. Garlepp. DPW found Ms. Garlepp ineligible for Medicaid benefits until February of 1993 due to her non-allowable expenses. Roy resubmitted the application in April of 1993. DPW approved the application in May with benefits retroactive to February 21, 1993.
Further, although Roy admits speaking to Ms. Singh, he denies that he made explicit representations to her with respect to when DPW would approve the applications.
By this suit plaintiff now seeks to recover from defendants the amounts unpaid to it as a result of the gaps in Degon’s and Garlepp’s Medicaid coverage.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass 14, 17 (1989).
If the moving party meets this burden, the opposing party must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. “A complete failure of proof concerning an essential element of the non-moving party’s case renders all other material facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 711 *690 (1991) (citing Celotex v. Catrett, 477 U.S. 317, 322 (1986)).
A. The Negligence Counts
In order to sustain a claim of negligence, plaintiff must prove that defendants owed it a duly of care. Spinner v. Nutt, 417 Mass. 549, 552 (1994); DeRoza v. Arter, 416 Mass. 377, 381 (1993). Plaintiff can do this by showing: (1) an attorney-client relationship or (2) foreseeable reliance by plaintiff. Spinner, 417 Mass, at 552; Schlechtv. Smith, 1994WL621594at*7 (D.Mass. 1994) (not reported in F. Supp.).
Plaintiff concedes that no direct attorney-client relationship existed and relies instead on the alternative ground that defendants owed it a duty based on its foreseeable reliance. Such a duty arises when the attorney knows the non-client will rely on the services rendered and the non-client’s reliance is reasonable. Id.; Spinner, 417 Mass, at 552; DeRoza, 416 Mass, at 382. Plaintiff concludes that both preconditions to his recovery — viz, knowledge by defendant and reasonable reliance by plaintiff — are supported by evidence at bar and that, therefore, summary judgment for defendant ought not to issue.
Reliance by the non-client is, however, unreasonable as a matter of law when the client and non-client possess potentially conflicting interests. Schlecht, 1994 WL 621594 at *7; Logotheti v. Gordon, 414 Mass. 308, 312 (1993) (Supreme Judicial Court will not impose conflicting duties on attorneys); see also, Flaherty v. Baybank Merrimack Valley, N.A., 808 F.Supp. 55, 61 (D.Mass. 1992) (citing Page v. Frazier, 388 Mass. 55, 63 (1983)). A conflict exists if, because she owes duties to more than one person or entity, the attorney is compromised in her ethical duty of loyalty to her client. Trask v. Butler, 10 ABA/BNA Lawyers’ Manual on Professional Conduct 175, 176 (Wash.Sup.Ct. No. 59934-3) (May 19, 1994) (strong policy reasons militate against finding a duty to a non-client where doing so detracts from the attorney’s ethical obligations to the client).
In some cases, the potential for conflict is quite clear, as for example, between a trustee and beneficiary, Spinner, 417 Mass, at 552-54, or between adversaries in a divorce proceeding. LaMare v. Basbanes, 418 Mass. 274 (1994).
Plaintiff argues that Webster Manor, on the one hand, and Mr. Degon and Ms. Garlepp, on the other, possessed the same interests, each endeavoring to ensure the patients’ care at Webster Manor by obtaining medicaid benefits. In support, plaintiff relies upon the deposition testimony of Paula McManus, Theresa Degon, and Raymond McElroy. All testified that they hired Attorney Roy to obtain long-term Medicaid benefits to pay for Degon’s and Garlepp’s care at Webster Manor. Plaintiff also cites Attorney Roy’s deposition testimony confirming that Roy handled the patients’ applications, answered questions regarding the patients’ finances and received the patients’ bills. Those facts fail, however, to demonstrate the absence of a potential conflict.
First, Mr. Degon and Ms. Garlepp’s interests were plainly incongruous with plaintiffs interests. Carol Singh’s assertion in her affidavit — if plaintiff knew of the problems with the Medicaid applications, “(the administration] would have taken steps to terminate the residency [sic] of Garlepp and Degon” — is ample proof of their dissonant postures.
Second, imposing a duty running to plaintiff risks the “creat[ion] of situation[s] antithetical to [the disciplinary rules].” Spinner, 417 Mass, at 554. Specifically, Attorney Roy was under an ethical obligation to Mr. Degon and Ms. Garlepp (1) to preserve their confidences and secrets,[1] (2) to avoid improper influence by others,[2] and (3) to represent their interests zealously.[3]
A duty running from Roy to plaintiff would erode all those obligations. As Attorney Roy points out in his affidavit, his duty to Mr. Degon and Ms. Garlepp required that he advise them regarding spending and transferring assets and Medicaid eligibility. His advice necessarily included the impact of certain courses of action upon their respective estates and obligated him to time the filing of the Medicaid applications pursuant to his clients’ eligibility, not with a view to the satisfaction of the needs of plaintiff.
Moreover, if a payment dispute arose between plaintiff and Mr. Degon or Ms. Garlepp, Roy’s duty would be to defend and protect his clients, not plaintiff. And, if Mr. Degon or Ms. Garlepp chose to reside elsewhere, Roy’s obligation would remain to protect his clients by securing financial assistance for their long-term care notwithstanding the negative impact their departure might have on plaintiffs income.
Finally, Attorney Roy’s “admissions” that he handled the Medicaid applications and communicated with plaintiff, suggest only that he acted as a conduit of information between plaintiff and the patients. Roy did not consult with plaintiff in filing the Medicaid applications and did not initiate contact with plaintiff. Indeed, Roy could ethically reveal only limited information, and could not ethically disclose client confidences or secrets or use information to disadvantage his clients, thus risking their eviction.
The sum of the forgoing is that Attorney Roy would face probable conflicts of interests if he owed duties to both his clients and to plaintiff. Although the instant plaintiff and the clients of defendants do not stand in veridical antagonistic positions, this Court is nevertheless persuaded that potentially conflicting interests existed between the nursing home and its residents. Therefore, plaintiffs reliance on defendants’ assurances was, in the circumstances at bar, unreasonable as a matter of law. For that reason, plaintiff cannot prevail on its claims of negligence. Summary judgment will issue for the defendant on Counts II and VII.
*691 B.The Breach of Fiduciary Duty Counts
Because, for the reasons explained above, the court finds no legal duty owed by defendants to plaintiff, plaintiffs claims of breach of fiduciary duty must also be dismissed. Alternatively, the court finds that no fiduciary relationship existed between plaintiff and defendant.
“Fiduciary” is a broad term embracing technical fiduciaries, such as attorney-client and trustee-beneficiary, as well as informal relationships which exist whenever one person trusts and relies on another. Black’s Law Dictionary 564 (5th ed. 1979). The exact limits of the term “fiduciary relationship” are difficult to ascertain, and relationships should be determined to be fiduciary in nature only where the particular facts of the case suggest the appropriateness of such a determination. Broomfield v. Kosow, 349 Mass. 749, 756 (1965) (citing Scott, Trusts (2d ed.) §468 and Restatement of Restitution, §166).
As stated supra, no formal attorney-client relationship existed between plaintiff and defendants. Further, there are no facts indicating the existence of an “informal” fiduciary relationship. Because Attorney Roy did not hold himself out as plaintiffs counsel, plaintiffs trust and reliance on Roy’s expertise could not create a relationship of confidence between them. Dolan v. Hickey, 385 Mass. 234, 236 (1982). And, while plaintiff asserts that it relied on Attorney Roy to complete the Medicaid applications, “plaintiff alone, by reposing trust and confidence in Roy, cannot transform an [arms-length] relationship into one which is fiduciary in nature.” Broomfield, 349 Mass at 755; Superior Glass Co. v. First Bristol County Nat’l Bank, 380 Mass. 829, 832 (1980).
As no fiduciary relationship existed, summary judgment for defendant on Counts IV and IX, plaintiffs claims of breach of fiduciary duty, will enter.
C.The Fraud and Chapter 93A Counts
Defendants contend that summary judgment must be granted on the claims of fraud because, as noted in the discussion, supra, of the negligence claims, defendants owed no legal duty to plaintiff. Schlecht, 1994 WL 621594 at *8 and cases therein cited. The cases upon which defendant relies stand for the proposition that, absent a duty to disclose, there can be no actionable fraud for failure to disclose. Id.; Kannavos v. Annino, 356 Mass. 42 (1969); Flaherty, 808 F.Supp. at 60; Austin v. Bradley, Barry & Tarlow, P.C., 836 F.Supp. 36 (D. Mass. 1993).
The case at bar is, however, quite different from a “failure to disclose” case. Here, plaintiff asserts that Attorney Roy affirmatively misrepresented facts. It is beyond cavil that, as defendants insist, Attorney Roy had no duly to speak; nevertheless, having elected to speak, Attorney Roy had an obligation to tell the truth. Kannavos, 356 Mass, at 48; Ackerman v. Schwartz, 947 F.2d 841, 847-48 (7th Cir. 1991).[4]
The obligation of verity is clearly set forth in the disciplinary rule which provides that, “in his representation of a client, a lawyer shall not . . . knowingly make a false statement of law or fact.” SJC Rule 3:07, DR 7-102. A breach of that obligation may well give rise to an actionable fraud.
The court notes that, while sound policy reasons limit an attorney’s liability to a non-client for negligence, the same is not true for fraud. Lack of a duly to plaintiff means Attorney Roy had no duty to disclose information pertaining to his client to plaintiff. Lack of a duty does not mean he may evade responsibility for an allegedly material lie. Nor may he find comfort in the policy encouraging zealous advocacy. Zealous advocacy must be performed within the bounds of the law. Moreover, the ethical rules are certainly not intended to “emancipate [lawyers] from the consequences of fraud.” Ultramares Corp. v. Touche, Niven & Co., 255 N.Y. 170, 174N.E.441 (1931) (Cardozo, J.).
Fraud requires proof of (1) misrepresentation as to a material fact, (2) intent to induce action by the misrepresentee, (3) knowledge of falsity or recklessness as to the truth, (4) reliance on the misrepresentation, and (5) resulting damage. Bishop, Prima Facie Case — Proof and Defense, 17A Mass. Prac. §961. Claims of negligent misrepresentation also require proof of privity between plaintiff and defendant or defendant’s actual knowledge of plaintiffs reliance. Massachusetts Jurisprudence, Personal Injury and Torts, §13:61: Austin, 836 F.Supp. at 40. The court finds that, at bar, genuine issues of material fact exist with respect to the elements of fraud. Summary judgment is, therefore, denied on Counts III, V, VIII and X, which present plaintiffs claims of fraud and violations of G.L.c. 93A.
D.The Third-Party Beneficiary Contract Counts
In order to recover as a third-party beneficiary, plaintiff must prove that it was an intended beneficiary of the contract for legal services between Attorney Roy and Mr. Degon and Ms. Garlepp. Spinner, 417 Mass, at 555. In a case such as this, a party is an intended beneficiary where the circumstances indicate that the parties to the contract intended to confer the benefit of legal counsel on plaintiff. Id. Plaintiff cannot rely merely on its status as the current residence of Mr. Degon and Ms. Garlepp and the probable recipient of their Medicaid benefits. See id. at 546 (plaintiffs cannot rely merely on their status as trust beneficiaries to show that they were intended beneficiaries of the contract between defendant attorneys and trustees).
Plaintiff again cites the deposition testimony of Paula McManus, Theresa Degon and Raymond McElroy in demonstration of the intent of the contracting parities. All indicated that they hired Attorney Roy to obtain long-term Medicaid benefits specifically to pay for the patients’ care at Webster Manor. *692 Attorney Roy asserts, in response, that Mr. Degon and Ms. Garlepp retained him for the broader purposes of advising them as to their assets and obtaining long-term benefits for whatever care they may require. Further, Roy alleges that he filed the Medicaid applications prior to plaintiffs receiving Degon and Garlepp into residence.
Although plaintiff, by citing the deposition testimony of Ms. McManus, Ms. Degon and Mr. McElroy, does more than rely solely on its status as host to defendant’s clients, the depositions fail to establish that Mr. Degon, Ms. Garlepp and Attorney Roy entered into contracts for legal services intending directly and primarily to benefit plaintiff. See id. at 546 (quoting Krawczyk u. Bank of Sun Prairie, 174 Wis.2d 1, 496 N.W.2d 218 (Ct. App. 1993)). Rather, the testimony establishes that plaintiff was an incidental beneficiary and “an incidental beneficiary does not suffice to impose a duty upon [Attorney Roy].” Id. (Citations omitted.)
Further, as with the negligence claims, probable conflicts of interest between plaintiff and Mr. Degon and Ms. Garlepp are compelling. If the contract were to be viewed as obliging Attorney Roy to protect plaintiffs interests as well as those of his clients, Roy would be subject to a continuing conundrum. The imposition of such discordant duties on Attorney Roy unfairly risks sundering his loyalties in a manner patently prohibited by the ethical rules. This Court concludes, therefore, that Roy did not owe plaintiff a duty of care under a third-party beneficiary theory, and summary judgment on Counts I and VI, the contract claims, will enter in defendant’s favor.
ORDER
For the foregoing reasons, defendant’s motion for summary judgment is ALLOWED as to Counts I, II, IV, VI, VII and IX and DENIED as to Counts III, V, VIII and X.

 J.C. Rule 3:07, DR 4-101.

Id., DR 5-107. Section (B) provides: “A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such services.”

 Id., DR 7-101. Section (A)(3) provides: “Alawyer shall not intentionally . . . prejudice or damage his client during the course of the professional relationship.”

Of course, Attorney Roy also had an obligation to protect client confidences and secrets. He could have refused plaintiffs requests for information, claiming the attorney-client privilege.