The National Shawmut Bank of Boston *vs.* Ella B. O. Hallett.

Suffolk.    October 7, 1947. — April 9, 1948.

Present: Qua, C.J., Lummus, Ronan, Spalding, & Williams, JJ.

*Evidence*, Relevancy and materiality.  *Bills and Notes*, Consideration. *Payment*.  *Practice, Civil*, Argument by counsel, Charge to jury. *Fiduciary*.  *Pledge*.

At the trial of an action on the last of a long series of renewal notes given over a period of years, it was immaterial that the plaintiff had " collected in principal and interest more than the face of the original note."

In the course of arguing to a jury that a certain business transaction was of an unusual nature, counsel was not entitled to describe from his personal knowledge the ordinary nature of such a transaction.

A trial judge was correct in not allowing counsel in argument to tell the jury what he "suspect[ed]" occurred at a certain business conference, where there had been no evidence to substantiate his suspicions.

At a trial where it was undisputed that one of the parties received a cashier's check, indorsed it and had it deposited in a bank, the trial judge did not charge on the facts in violation of G. L. (Ter. Ed.) c. 231, § 81, when he stated to the jury, as the legal effect of such undisputed facts, that that party "got the money."

No fiduciary relation arose between a bank and a borrower from the making of a loan evidenced by a note secured by an assignment of a life insurance policy, although there was mutual respect and confidence between them.

No wrongful dealing by a bank, as pledgee, with a life insurance policy assigned to it as security for payment of a loan made by it appeared where, upon failure of the borrower-insured to pay a premium, the policy was automatically converted into one of term insurance, and, without notice to him, the bank decided to "let the term insurance remain" and did not exercise an option given by the policy either to surrender it and take its cash surrender value or to have it indorsed for a certain amount of paid up insurance: no duty of notification rested upon the bank.

CONTRACT.  Writ in the Superior Court dated July 30, 1940.

The action was tried before *Good*, J.

*J. N. Welch*, for the defendant.

*R. L. Ryder*, (*A. P. Tropeano* with him,) for the plaintiff.

WILLIAMS, J.  This is an action of contract to recover principal and interest alleged to be due on a promissory note for $31,520.83 dated June 15, 1936, and payable three months after date to the Citizens National Bank.  After entry of the case, The National Shawmut Bank of Boston, as assignee of the note, was substituted as plaintiff for the Citizens National Bank.  Wherever the bank or plaintiff is hereinafter mentioned, reference is made to the Citizens National Bank.  The defendant's answer sets up lack of consideration, failure of consideration, payment, fraud, and misappropriation of collateral.  The action was tried to a jury who returned a verdict for the plaintiff.  The case is before us on the defendant's exceptions.

On October 4, 1922, the defendant borrowed $35,000 from the plaintiff and delivered to it her collateral note for that amount with three months' interest added.  The collateral mentioned in the note included two life insurance policies of the defendant with The Travelers Insurance Company, one for $15,000 and one for $20,000.  The defendant received from the plaintiff a cashier's check for $35,000 which she indorsed.  It was later deposited with a New York bank to the credit of the estate of her deceased father, Jacob Ottman, under whose will she was the principal

beneficiary. Thereafter renewal notes were given and accepted at quarterly intervals until June 15, 1936, the date of the note in suit. A record of the loan and the payments of principal and interest thereon appeared on six original cards produced by the plaintiff and received as evidence without objection. Payments on account of interest and principal were irregularly received. According to this record the loan reached its low of approximately $25,000 in May, 1932. After June, 1932, no further payments of interest or principal were made. The insurance policies were in danger of lapsing for failure of premium payments. The policies contained similar provisions. Each provided for a period of grace of thirty-one days for premium payments, and that "In case of default in the payment of any premium . . . the Company will reinstate the contract at any time, if not previously surrendered for its cash value, upon written application . . . with evidence of insurability satisfactory to the Company." Each provided further that on default "the insurance will automatically continue . . . as term insurance during the term . . . specified" in the policy; "or in lieu thereof, upon written request made by the Insured within three months from said due date the Company will, as the Insured may elect, indorse the contract for the amount of paid-up insurance [specified in the policy] . . . or upon surrender thereof pay the cash value [also specified in the policy] . . . . The term insurance and the paid-up insurance specified above may be surrendered for cash. Paid-up insurance shall be subject to cash loans." These policies had been assigned to the plaintiff by written assignments separate from the note. On April 20, 1933, the plaintiff wrote to the defendant advising her that the grace dates for payment of the insurance premiums on these policies would expire on the following April 24 and May 8 and asking that she remit to it funds to take care of these premiums. The premiums not having been paid, the insurance company wrote to the defendant care of the plaintiff on April 26 and May 10 advising that the grace periods on the policies had expired. The policies thereafter in accordance with their provisions automatically were continued as

term policies. On June 7, 1933, the bank decided "to let the term insurance remain." It does not appear that the defendant was notified of this decision. At the times of default one policy had a cash surrender value of $3,239.60 and the other a cash surrender value of $3,284.25, a total of $6,523.85. The face value of the $20,000 policy was then $18,144.60 having been reduced by a policy loan of the defendant. The terms of the converted policies expired respectively on June 3, 1941, and October 8, 1942. After June 7, 1933, at the usual quarterly intervals the plaintiff continued to send renewal notes to the defendant which were signed by her and returned. As above stated, the last note was the one in suit.

The first exception of the defendant was to the exclusion of evidence. The plaintiff had called as a witness one Lydston who as a clerk in the employ of the plaintiff had charge of the so called Hallett loan between October, 1926, and June, 1936. Through him the original records of the Hallett loan on six cards had been offered in evidence without objection. The witness was asked by the defendant's attorney on cross-examination, "Now, may I ask you whether in 1936 you ever took the trouble to see how much money had been paid to the bank on this transaction?" On objection counsel stated, "I wish to show that the whole loan had been repaid in principal and interest payments up to that time . . . that the bank had collected in principal and interest more than the face of the original note." The question was excluded and exception saved.

It was open to the defendant to show that at the time the note of June 15, 1936, was given in renewal of the next previous note, the amount of $31,520.83 evidenced on its face was not then owed by the defendant. But the fact that payments of principal and interest over the period from 1922 to 1936 totalled an amount in excess of the face of the original note would not prove the amount of the current indebtedness. The record of the transactions between the plaintiff and the defendant was in evidence and, if questioned, was subject to inquiry. In fact an examination of the entries on the record cards shows that the defendant

was credited as having paid on account of principal and interest approximately $25,000. The question was properly excluded. There was no offer to show that the answer of the witness would differ from the record already in evidence.

The defendant testified that on October 4, 1922, when she went to the plaintiff bank to obtain the loan, her husband accompanied her and that she was presented with a paper or some papers to sign and that the president of the bank at that time said to her, "The paper did not obligate me in any way as it was entirely covered by insurance. He also said I would be obliged to sign some papers from time to time but they would not mean anything"; that she believed what he told her and relied on it and that she would not have signed the papers except for what he said; that she later signed other papers as a consequence of that talk; that she did not realize what the note was for or that she would have to pay back the $35,000. The defendant contends that she was induced to sign the original note and the later notes by reason of this fraudulent statement made by the president of the bank and that she believed the loan would be paid by the insurance. This issue of fraud was submitted to the jury who found against the contention of the defendant.

In his argument to the jury the defendant's counsel suggested that the loan originally made was not the usual type of loan and intended to go on to argue that because the loan was so unusual the jury should believe the defendant's testimony about the unusual provisions in respect to her personal liability. In developing this argument, counsel started to describe to the jury the usual process of getting a loan from a bank on collateral security. The judge interrupted counsel and said, "You don't need to tell the jury the process of getting a loan. You don't know any more about it than they do or if you do you shouldn't say anything about it." The defendant thereupon saved an exception to the judge's remarks. There seems to be nothing unusual in the negotiation of this loan, but, if there were, counsel was not entitled to describe from his personal knowledge the ordinary method of obtaining a collateral loan at a bank. *Commonwealth* v. *Sherman,* 294 Mass. 379, 390, 391.

Later in argument the defendant's counsel referred to the part Mr. Hallett took in negotiating the loan. He said in substance, "This is what I suspect Mr. Hallett was thinking and this is what I suspect Mr. Hallett said to the bank officer in the presence of his wife." The judge interrupted and said, "I shall ask the jury to disregard that. I shall not allow you to tell them what you suspect about the attitude or frame of mind of Mr. Hallett. It is no concern of the jury what you might suspect." The defendant saved an exception to this remark of the judge. There is no evidence in the record showing that Mr. Hallett did or said anything at the time of the negotiation of the loan except that he accompanied his wife and was there present. The judge was justified in checking the expression of counsel's suspicions. *Commonwealth* v. *Sherman,* 294 Mass. 379, 390, 391.

At the conclusion of the charge the defendant's counsel excepted to the refusal of the judge to allow him to argue that Hallett and the president of the bank jointly committed a fraud on the defendant. There was no evidence warranting such an argument.

The defendant further excepted to the following statements of the judge in his charge, "Now, the burden of proving that the money is due is imposed under the law upon the plaintiff. The plaintiff says, 'Mrs. Hallett, you signed a note and we gave you money in return for the note. That is your signature.' To that extent, I guess, the parties are in agreement. She did get the money." And again, "Now, this woman either owes this money or she doesn't owe it. She got the money."

Obviously the jury must have understood that the judge referred to the cashier's check, commonly regarded as the equivalent of money. Constructively it was money. It was not in dispute that the defendant received it and passed title to it by her indorsement. As the check eventually was deposited in a New York bank it may well have been that no money was ever physically delivered by the plaintiff to anyone, but that the transaction was eventually concluded by a balancing of credits. It cannot be said that the judge violated G. L. (Ter. Ed.) c. 231, § 81, by im-

properly charging with respect to matters of fact. The judge may state the legal effect of admitted facts. *Todd* v. *Old Colony & Fall River Railroad,* 7 Allen, 207.

The defendant further excepted to a statement by the judge in his charge that "if she [the defendant] were not defrauded she has no defence." The defendant contends that she had a defence by reason of a wrongful appropriation of the security held by the plaintiff. She presented requests for rulings designed to raise the questions of law involved and has excepted to their denial. We must consider the situation of the parties in 1933 when the insurance policies were converted into term insurance, because the real complaint of the defendant is lack of notification to her by the plaintiff of such conversion.

The relation of the plaintiff and the defendant was that of creditor and debtor. Nothing in the history of their business transactions warrants the imposition on the plaintiff, in connection with its handling of the insurance policies, of any obligation other than that arising from an ordinary pledge of personal property. See *Granite Bank* v. *Richardson,* 7 Met. 407; *Benj. N. Moore & Sons Co.* v. *Manufacturers National Bank,* 261 Mass. 328; *First National Bank* v. *Mathey,* 308 Mass. 108, 110.

The relationship of the parties being a business one, the existence of mutual respect and confidence did not make it fiduciary. *Hawkes* v. *Lackey,* 207 Mass. 424, 432. *Comstock* v. *Livingston,* 210 Mass. 581. *Snow* v. *Merchants National Bank,* 309 Mass. 354, 360, 361. *Yamins* v. *Zeitz, ante,* 268.

The policies, held by the plaintiff as security for the debt of the defendant, provided that on default of premium payments they would automatically be continued for specified terms. The defendant did not make her premium payments and as a consequence the policies were converted into term insurance. Such conversion was not attributable to any act or failure to act on the part of the plaintiff. The defendant contends that she should have been notified of the action of the plaintiff on June 7, 1933, when its committee voted to "let the term insurance remain." No duty of notification existed. The defendant

knew that it was necessary to pay premiums at stated intervals in order to keep the policies alive; and the plaintiff might fairly assume that she was familiar with the optional provisions of the policies on default of premium payments. She could not have forced the plaintiff to indorse the insurance policies for the amount of paid up insurance or to surrender them for their respective cash values. *Granite Bank* v. *Richardson,* 7 Met. 407. *Whitman* v. *Boston Terminal Refrigerating Co.* 233 Mass. 386.

She now contends that she would not have signed the note in suit if she had known of the conversion of her policies into term insurance. Her signature on the note, however, was not obtained by any fraud or misrepresentation on the part of the plaintiff. If she had refused to sign any renewal note after June 7, 1933, her position in reference to her indebtedness and the security held by the plaintiff would not have been improved. She could have regained control of her policies only by paying to the plaintiff the amount of her indebtedness. *Granite Bank* v. *Richardson,* 7 Met. 407. Nothing which the plaintiff did prevented the defendant from taking steps to have the policies reinstated if she so desired.

As there was no duty of notification either of the conversion or of the action of the bank, no appropriation of the collateral by the plaintiff to its own use, no evidence that the plaintiff elected to accept the converted insurance as payment of the defendant's indebtedness, and no implied appropriation of the cash surrender values of the policies to be credited pro tanto on the defendant's indebtedness, the requests for rulings which were predicated on the affirmative of these propositions were properly denied.

*Exceptions overruled.*