In re Sharon E. GREENBERG and
Edward H. Greenberg, Debtors.

ADAMS CO–OPERATIVE
BANK, Plaintiff,

v.

Sharon E. GREENBERG, Jack E. Hough-
ton, Jr., in his Capacity as Bankruptcy
Trustee, Commonwealth of Massachu-
setts, United States of America, and Mi-
chael Deep, in his Capacity as Trustee of
Hill Province Realty Trust, Defendants.

Bankruptcy No. 93–43077–HJB.
Adversary No. 96–4388.

United States Bankruptcy Court,
D. Massachusetts.

Aug. 29, 1997.

Timothy J. Morey, North Adams, MA, for Adams Co–op. Bank.

Jack E. Houghton, Jr., Pittsfield, MA, trustee.

Henry J. Riordan, U.S. Dept. of Justice, Washington, DC, for U.S.

Karen L. Paino, Boston, MA, for Mass. C.I.R.

Fred Thompson, North Adams, MA, for Michael Deep.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

The matter before the Court arises from a "Complaint for Interpleader and Declaratory Relief" (the "Interpleader Complaint") filed by Adams Co-operative Bank (the "Bank") against Sharon E. Greenberg (the "Debtor"), Jack E. Houghton, Jr., the Chapter 7 Trustee in Bankruptcy in this case (the "Trustee"), the Commonwealth of Massachusetts (the "Commonwealth"), the United States of America (the "United States"), and Michael Deep, in his capacity as trustee of Hill Province Realty Trust ("Deep"). The Bank asks that the Court determine which defendant is entitled to be paid a surplus in the sum of $6,923.45 resulting from the Bank's foreclosure of its second mortgage on the Debtor's residence located at 75 Hill Province Road in Williamstown, Massachusetts (the "Property"). The Bank also seeks a declaratory judgment that the foreclosure sale was validly conducted.

In response to the Interpleader Complaint, the Debtor filed a variety of counterclaims and cross-claims, as well as third party complaints against several parties.[1] The majority of the issues raised by the Debtor in her various pleadings were resolved without trial as is set forth below. The only issues that remain for determination are (1) whether the Bank improperly applied a prepayment in the amount of $22,500 made by the Debtor on the Bank's first mortgage loan on the Property; and (2) whether, as a result, the

---

1. The Debtor, for all intents and purposes, acted pro se. Therefore, the pleadings filed by the Debtor frequently failed to conform to standards regularly demanded of attorneys. As is set forth below, the Court was often compelled to categorize a pleading (e.g., as a counterclaim, cross-claim, etc.) in order to assure both that the Debtor's rights were preserved and that the resolution of those rights was appropriate.

second mortgage loan was not in default during the relevant period, and therefore, the Bank's foreclosure. of the second mortgage was invalid.

## I. *Background and Procedural History*

On November 9, 1993, the Debtor filed a petition in this Court under Chapter 13 of the Bankruptcy Code. On September 29, 1994, upon the Debtor's motion, the case was converted to a case under Chapter 7.

The Bank held two mortgages on the Property: a first mortgage which secured a purchase money loan in the original principal amount of $100,000; and a second home equity mortgage loan in the original principal amount of $50,000. The Bank's foreclosure of its first mortgage was stayed by the filing of the bankruptcy petition. On September 20, 1994, the Bank filed a motion for relief from the automatic stay to foreclose upon its mortgages. At a hearing held on November 2, 1994, the Court granted relief from the automatic stay, effective January 15, 1995, conditioned on the Bank's offer to conduct its foreclosure sale in conformity with the sale standards set forth in the case of *In re General Indus., Inc.,* 79 B.R. 124 (Bankr. D.Mass.1987).

On June 28, 1995, the Bank conducted a foreclosure of its second mortgage on the Property by public auction. Deep, as trustee of Hill Province Realty Trust, purchased the Property for the sum of $78,000, subject to the Bank's outstanding first mortgage loan of approximately $94,000, and outstanding real estate taxes and water and sewer charges of $8,000. Therefore, the total consideration for the property exceeded the sum of $180,-000.[2] The sale resulted in a surplus in the sum of $6,923.45 (the "Surplus Funds").

**2.** The Bank had earlier obtained an appraisal of the Property estimating the fair market value at $155,000. Thus, the sale price substantially exceeded the appraised value of the property.

**3.** The action was originally commenced in the Berkshire County Superior Court (the "State Court") on July 31, 1995. On September 15, 1995, the defendant United States exercised its statutory right, pursuant to 28 U.S.C. § 1444, to remove the action from the State Court to the United States District Court for the District of

On September 27, 1996, the Bank commenced the instant proceeding.[3] On December 5, 1996, the Interpleader Complaint was amended to add Deep, in his capacity as trustee of Hill Province Realty Trust, as a defendant. Ironically, see n. 3 supra, both the United States and the Commonwealth subsequently disclaimed any interest in the Surplus Funds. Deep, in his capacity as trustee of Hill Province Realty Trust, answered the Interpleader Complaint and also requested that it be dismissed on the grounds that it failed to state a claim against him upon which relief could be granted. The Trustee defaulted. However, the Debtor filed an answer and a pleading entitled "Adversary Proceeding Counter–Complaint and Declaratory Relief." That pleading sought relief against the Bank, the Trustee, the United States, the Commonwealth, Deep in both his individual capacity and in his capacity as trustee of Hill Province Realty Trust, Joseph Truskowski, the president of the Bank ("Truskowski"), Rick Gurney, the vice-president of the Bank ("Gurney"), Leonard Turgeon, the attorney who represented the Bank with respect to the foreclosure of the first mortgage ("Turgeon"), and Fred T. Thompson, attorney for Deep ("Thompson"). On December 12, 1996, the Court ordered that the Debtor's claims set forth in the "Adversary Proceeding Counter–Complaint and Declaratory Relief" against the Trustee, the United States, the Commonwealth, and Deep in his capacity as trustee of Hill Province Realty Trust, be deemed cross-claims, and that the Debtor's claims as to Deep, individually, Truskowski, Gurney, Turgeon, and Thompson be deemed third-party complaints.

On March 31, 1997, after a hearing, the Court ruled on the following pleadings filed in response[4] to the Debtor's various counter-

Massachusetts (the "District Court"). The District Court then referred the matter to this Court on June 7, 1996.

**4.** The Commonwealth did not respond to the Debtor's cross-claim asserting that the Commonwealth had no interest in the Surplus Funds because the Commonwealth's claims were dischargeable. Notwithstanding that nonsequitur, the Commonwealth disclaimed any interest in the Surplus Funds. Accordingly, the Court will direct the Clerk of this Court to enter a Notice of

claims, cross-claims and third party complaints, as follows:

1. *Motions for Summary Judgment and/or to Dismiss Third Party Claims filed by Third Party Defendants Truskowski, Gurney, and Turgeon.*

The Court granted these Motions for Summary Judgment and dismissed the Debtor's third party claims against these defendants on the grounds that the Debtor's allegations set forth no basis to support any personal liability on the part of these defendants, either directly or by virtue of their relationship with the Bank.

2. *Motions for Summary Judgment and/or to Dismiss Third Party Claims filed by Third Party Defendants Thompson and Deep, individually, and Motion for Summary Judgment and/or to Dismiss Cross–Claim by Deep, in his capacity as trustee of Hill Province Realty Trust.*

The Court abstained from further consideration of and dismissed the Debtor's claims against these defendants on the grounds that the claims were not related to the bankruptcy case, would produce no benefit for the estate, and were strictly state law issues. *See* 28 U.S.C. § 1334(b) and (c).

3. *The Trustee's Motion for Summary Judgment and/or to Dismiss Cross–Claim*

The Debtor's allegations against the Trustee related to the Trustee's alleged malfeasance and misfeasance during the course of the Chapter 7 case with respect to assorted suits the Debtor had instituted against a variety of parties. The Court ruled that the Debtor's "objection" to the Trustee's motion failed to demonstrate a genuine issue of material fact in that the factual issues set forth in her "objection" were unverified. *See In re Aero–Fastener*, 177 B.R. 120 (Bankr.D.Mass. 1994).

Default against the Commonwealth and a default judgment 10 days thereafter. If the Court has misunderstood the Commonwealth's intent, it is free to ask that the default be removed for cause during the interim period.

In addition, the Court held that two relevant prior (written but unpublished) decisions, dated April 21, 1995 and June 7, 1996, entered in the bankruptcy case, were the law of the case and controlling. *See In re Anolik*, 207 B.R. 34, 38 (Bankr.D.Mass.1997); *In re Snowcrest Dev. Group, Inc.*, 200 B.R. 473, 480 n. 6 (Bankr.D.Mass.1996) (and cases cited therein); *150 North St. Assoc. Ltd. Partnership v. City of Pittsfield (In re 150 North St. Assoc. Ltd. Partnership)*, 184 B.R. 1, 6 (Bankr.D.Mass.1995); *McDonough v. Plaistow Coop. Bank (In re McDonough)*, 166 B.R. 9, 13 (Bankr.D.Mass.1994). In those decisions, the Court supported the actions of the Trustee in the face of the same criticisms made by the Debtor.

The Debtor also alleged that the Trustee breached his duty to attend the Bank's foreclosure sale. Pursuant to former Local Rule 33(B), trustees were required to attend their own auctions. But trustees did not have a responsibility to attend a secured creditor's auction. In view of the foregoing, the Trustee's Motion for Summary Judgment was granted.

4. *The United States' Motion for Summary Judgment as to the Debtor's Cross–Claim*

In the Debtor's cross-claim against the United States, the Debtor sought a declaration that outstanding 1987 and 1988 federal income taxes, penalties, and interest assessed against the Debtor were dischargeable and, therefore, that the United States did not have a claim to the Surplus Funds (again a nonsequitur if the United States held a valid lien).

Because, on April 18, 1997, the United States had filed a Notice of Disclaimer of any right to the surplus funds, the Court endorsed the Motion for Summary Judgment as "Moot as the IRS has waived its claim with respect to the funds at issue."[5]

5. In addition, with respect to the dischargeability of the income taxes at issue, the Debtor brought a separate adversary proceeding, No. 96–4385, on September 26, 1996. Judgment entered in the Debtor's favor on May 14, 1997.

### 5. The Bank's Motion for Summary Judgment and/or to Dismiss Counterclaims

The Debtor's counterclaims against the Bank contended that the Bank acted in bad faith in its dealings with the Debtor, and failed to follow the standards set forth in *In re General Industries* in its foreclosure of the second mortgage. Actually, the Debtor's claims against the Bank fell into two categories. First, the Debtor objected to the procedures used by the Bank in its foreclosure of the second mortgage, and contended that the foreclosure should be declared invalid. Further, the Debtor argued that even if the foreclosure was valid, the surplus was not properly calculated. Second, the Debtor claimed that the second mortgage loan should never have been deemed in default.

More specifically with respect to the procedures used by the Bank in its foreclosure process, the Debtor alleged that (1) the sale advertising of the prepetition scheduled foreclosure of the first mortgage was excessive and the advertised qualifying offer was so high that the proposed sale was chilled; (2) the sale advertising with respect to the foreclosure of the second mortgage was also excessive; (3) disclosure by the Bank to potential bidders at the foreclosure sale (of the second mortgage) as to the outstanding balance of the first mortgage chilled that sale; (4) the foreclosure sale price was too low; (5) the Bank's bid at the foreclosure sale was also too low; and (6) notice of the second mortgage foreclosure sale to the Debtor's husband and co-obligor, Edward Greenberg, was defective.

Although the Debtor filed an affidavit in response to the Bank's motion for summary judgment, it did not address any of the issues relating to the foreclosure sale procedure. Therefore, with respect to those issues, the Debtor's opposition was insufficient. *See In re Aero–Fastener*, 177 B.R. 120 (Bankr. D.Mass.1994). Nevertheless, the Court found that the Bank would have been entitled to judgment as a matter of law even had the Debtor's arguments been properly presented. The Court found that the advertising of the foreclosure sale of the first mortgage was not excessive and that the qualifying offer was not too high. The Court also rejected the Debtor's argument that the advertising of the foreclosure sale of the second mortgage was excessive. The Court further ruled that there was nothing inappropriate in disclosing information relating to the first mortgage to potential bidders at the second mortgage foreclosure sale, as the first mortgage was an encumbrance to which the second mortgage foreclosure sale was subject. With respect to the Debtor's complaint that the sale produced insufficient value, the Court held, consistent with Supreme Court precedent, that inadequacy of the price, without more, is not enough to overturn a foreclosure sale. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). Regarding the Debtor's assertion that the Bank's bid was too low, the Court ruled that nothing in Massachusetts law requires a lender to bid more than the amount owed on its mortgage. And as to the complaint that the Bank failed to give sufficient notice of the foreclosure sale to Edward Greenberg, the Court ruled that notice to Mr. Greenberg was not required because he did not have an interest in the Property.[6]

With respect to the question of the default status of the second mortgage loan, the issues were more complex and the facts, alleged in the Debtor's affidavit, set forth genuine issues of material fact. Specifically, the Debtor argued that on September 21, 1982, she made a prepayment of $22,500 on the first mortgage and that the Bank incorrectly and/or improperly applied the prepayment. She argues that she never agreed to a modification of the first mortgage loan terms, and if she did, then the Bank had an obligation to advise her that such a modification was not in

---

**6.** While Mr. Greenberg was obligated on the debt, he did not have any interest in the Property itself. Although the failure to give Mr. Greenberg notice might have affected the Bank's ability to collect a deficiency from him on the second mortgage loan, that issue is irrelevant because first, there was no deficiency, and second, even if there was a deficiency, it would have been discharged in the bankruptcy case. In any event, the failure to provide notice to Mr. Greenberg would not have affected the validity of the foreclosure sale under Massachusetts law. *See* Mass. Gen.Laws ch. 244, § 14.

her best interest. She maintains that the Bank should have left the amount of the monthly payments constant and only shortened the term of the loan. Instead, the Bank left the term unchanged, recalculated the amortization of the loan based on the new principal balance, and reduced the monthly payments. The Debtor contends that had the Bank not changed the monthly payments, the first mortgage loan would have been paid long before foreclosure proceedings were instituted, and the excess payments could have been applied to the second mortgage loan so that it also would not have fallen into default.

Inasmuch as the Debtor's affidavit (particularly with respect to whether she actually signed a loan modification agreement and with respect to other circumstances surrounding its execution) presented genuine issues of material fact, the Court allowed the Bank's Motion for Summary Judgment as to all issues except for the application of the $22,500 prepayment. The Court then set a trial date for resolution of this final issue. After a two-day trial held on May 27 and 28, 1997, the Court took the matter under advisement.

## II. *Discussion*

The following constitute the Court's findings of fact and conclusions of law, pursuant to Fed.R.Bankr.P. 7052.

On September 21, 1982, the Debtor made a prepayment in the amount of $22,500 on the first mortgage. The Bank applied the payment to principal, kept the term and interest rate of the loan the same, and reduced the Debtor's payment from $1,101.29 to $846.45 per month. The Bank introduced into evidence a document entitled "Agreement for Changes on Direct Reduction Mortgage" (the "Loan Modification"), setting forth the foregoing amended terms. The Bank alleges that the Loan Modification, approved by the Bank on October 14, 1982, was executed by the Debtor between September 21, 1982 and October 14, 1982. From October 1982 until early 1993, the Debtor paid the loan according to the modified terms.

The Debtor disputes the authenticity of her purported signature on the Loan Modification. She asserts that it is not in her handwriting. The Debtor also asserts that the Loan Modification should be deemed invalid because the front of the document is incomplete. The date the agreement was made is omitted. Also omitted is the Debtor's name from a paragraph identifying the parties to the agreement.

When the authenticity of a signature is put in issue, the burden of establishing it is on the party claiming under the signature. *See* Mass.Gen.Laws ch. 106, § 3–307(1)(a); *Coupounas v. Madden,* 401 Mass. 125, 129, 514 N.E.2d 1316, 1320 (1987). To authenticate the Debtor's signature on the Loan Modification, the Bank offered the testimony of both persons who executed the document as witnesses to the Debtor's signature: Joseph F. Truskowski, a notary public and officer and president of the Bank, and Mary P. Angeli, an employee of the Bank for more than thirty years. Unfortunately, neither had a real memory of their meeting with the Debtor over fifteen (15) years before. Mr. Truskowski did offer that he had never executed a document as a witness to a signature without the presence of the signature on the document and the signer present. Ms. Angeli testified in a similar fashion.

In rebuttal, the Debtor testified she would not have signed the Loan Modification without a meeting at which the loan changes were explained to her, and since she could not remember such a meeting, the signature could not be hers. The Debtor also introduced examples of her signature (Def's Ex. 1) and argued that the signature on the Loan Modification was different from those contained in the Debtor's specimens.

The Court found the testimony of the Bank's witnesses far more credible than the Debtor's, but of little real help. However, pursuant to Fed.R.Evid.Rule 901(b)(3), a trier of fact may base an opinion as to authenticity upon a comparison between a questioned piece of evidence and an exemplar the authenticity of which has been sufficiently established. *See* Hon. Barry Russell, *Bankruptcy Evidence Manual* § 901.3 (1997). Thus, as fact finders, trial judges may authenticate writings by comparing them with authenticated specimens. *E.g., Mo–Kan*

*Teamsters Pension Fund v. Creason,* 716 F.2d 772, 775 (10th Cir.1983); *Wausau Sulphate Fibre Co. v. Comm'r of Internal Revenue,* 61 F.2d 879, 880 (7th Cir.1932) (signature comparisons may properly be made by triers of fact); *Citizens' Bank & Trust Co. v. Allen,* 43 F.2d 549, 550 (4th Cir.1930). The Court finds the Debtor's signature on the Loan Modification sufficiently similar to the specimens produced by the Debtor herself to conclude that the signature purported on the Loan Modification to be the Debtor's is in fact the signature of the Debtor.

■ Further, the Court finds that the omissions on the Loan Modification are not sufficient to render that document invalid. The Loan Modification correctly identifies the Debtor and the mortgage subject to modification; it contains the modified terms; it was signed by the Debtor, two witnesses, and the Bank's president; and it contains the date the modification was passed under the authority of the Bank's board of directors.

■ More importantly, not only did the Debtor sign the Loan Modification, but she continued to make the lower monthly payments for more than ten (10) years. The Bank introduced copies of the annual statements that were mailed to the Debtor at her address. These statements illustrate exactly how the monthly payments were applied, and therefore, put the Debtor on notice as to any potential problems. It was not until the Bank started foreclosure proceedings that the Debtor began to complain about the application of the prepayment. There could have been no reasonable doubt by the Debtor as to whether and how her first mortgage loan had been modified; and, if there was ever such doubt, it was waived by the Debtor's inaction[7].

■ The Debtor also argues that the Bank had a duty to advise her as to the different methods of applying the prepayment, and particularly which application would be most beneficial to her. In the Debtor's view, the Bank breached this duty when it kept the term of the loan the same and lowered the monthly payment instead of keeping the payment constant and shortening the term of the loan. The Debtor asserts that if the payments had been kept constant, the loan secured by the first mortgage would have been paid off in 1991. The Debtor then argues that to the extent the first mortgage would have been paid off earlier, payments otherwise applied to the first mortgage would have been paid toward the second mortgage which, in turn, would have prevented the default on that loan.

■ The relationship of debtor and creditor, without more, does not establish a fiduciary relationship. *See, e.g., Travel Serv. Network, Inc. v. Presidential Fin. Corp.,* 959 F.Supp. 135, 144 (D.Conn.1997) (applying Massachusetts law); *Flaherty v. Baybank Merrimack Valley N.A.,* 808 F.Supp. 55, 65 (D.Mass.1992); *Superior Glass Co., Inc. v. First Bristol County Nat'l Bank,* 380 Mass. 829, 832, 406 N.E.2d 672, 674 (1980); *Rockland–Atlas Nat'l Bank v. Barry,* 336 Mass. 220, 223, 143 N.E.2d 534, 536 (1957); *Nat'l Shawmut Bank v. Hallett,* 322 Mass. 596, 602, 78 N.E.2d 624, 628 (1948); *Snow v. Merchants Nat'l Bank,* 309 Mass. 354, 360, 35 N.E.2d 213, 217 (1941); *Blais v. Warren Five Cents Sav. Bank,* 1993 Mass.App.Div. 213, 1993 WL 488429 (Mass.App.Div.1993). Traditionally, Massachusetts courts have viewed a bank's relationship to its customers simply as one of creditor and debtor; a relationship which imposes no duty to counsel or make disclosures to the customer. *Flaherty,* 808 F.Supp. at 64.

■ Nonetheless, a fiduciary relationship can develop where one party reposes its trust and confidence in another. *Industrial Gen. Corp. v. Sequoia Pac. Sys. Corp.,* 44 F.3d 40, 44 (1st Cir.1995); *F.D.I.C. v. Fordham (In re Fordham),* 130 B.R. 632, 649 (Bankr.D.Mass.1991); *see Snow,* 309 Mass. at 360, 35 N.E.2d at 217. However, Massachusetts law is clear that one party cannot unilaterally transform a business relationship

7. The Debtor did testify to a memory of having spoken to some unnamed person at the Bank well after the prepayment. She claimed to have asked for an explanation as to why payments were reduced and to have received an assurance by the unspecified person that the change in payment was attributable to escrow payments no longer being collected by the Bank. The Court finds the Debtor's testimony in this regard is not credible.

into a fiduciary relationship. *E.g., Sequoia Pacific*, 44 F.3d at 44; *Travel Serv. Network*, 959 F.Supp. at 144; *Flaherty*, 808 F.Supp. at 65; *Superior Glass*, 380 Mass. at 832, 406 N.E.2d at 674; *Broomfield v. Kosow*, 349 Mass. 749, 755, 212 N.E.2d 556, 560 (1965); *Blais*, 1993 Mass.App.Div. 213; *see Fordham*, 130 B.R. at 649; *Hallett*, 322 Mass. at 602, 78 N.E.2d at 628; *Snow*, 309 Mass. at 360, 35 N.E.2d at 217. Rather, to create such a relationship, the fiduciary, in this case the Bank, would have to know of and accept the plaintiff's trust. *Blais*, 1993 Mass.App. Div. 213; *see Fordham*, 130 B.R. at 649; *Broomfield*, 349 Mass. at 755, 212 N.E.2d at 560.

As the third party plaintiff, the Debtor bears the burden of proof with respect to her counterclaims. The Debtor's allegations that she was relying on the Bank to accurately advise her will simply not suffice to create a fiduciary duty to her by the Bank. The Debtor has offered no evidence that her transactions with the Bank were anything but arm-length business transactions, and she has not offered any evidence that the Bank either had knowledge of or accepted her trust.

 Of course, under Massachusetts law, even in the absence of a fiduciary relationship, every contract contains an implied covenant of good faith. *Fordham*, 130 B.R. at 643; *Shawmut Bank, N.A. v. Wayman*, 34 Mass.App.Ct. 20, 25, 606 N.E.2d 925, 928 (1993); *Blais*, 1993 Mass.App.Div. 213, at n. 2; *see* Mass.Gen.Laws ch. 106, § 1–203. Accordingly, that duty of good faith would require that a bank be honest in its dealings with a borrower and not purposefully injure a borrower's right to obtain the benefits of the contractual relationship with the bank. *Wayman*, 34 Mass.App.Ct. at 25, 606 N.E.2d at 928.

 The Debtor alleges that the Bank breached its covenant of good faith and fair dealing by failing to disclose to her the method by which the application of the prepayment would be most beneficial to her. This Court is unable to locate any case or statutory authority for imposing such a disclosure requirement on a bank—and apparently for good reason. First, imposing such a duty upon a bank would be most impractical. Applying a prepayment in a fashion best suited for a borrower is entirely dependent on both the borrower's preferences and financial circumstances. For instance, one borrower might prefer or require lower monthly payments while another might prefer to keep higher monthly payments in order to pay off the loan sooner. Second, the Debtor's assertions that (i) she would have been able to make the larger monthly payments which would have been required if the term of the loan was shortened, and (ii) once the first mortgage was paid off, she would have applied the monthly savings to the payment of the second mortgage are highly speculative. The Debtor's arguments are based on nothing more than conjecture and self-serving hindsight.

Therefore, while it may be true that the Bank may have failed to disclose to the Debtor all of the possible ways in which the prepayment could have been applied, nondisclosure of such information did not amount to dishonesty on the part of the Bank. *See Wayman*, 34 Mass.App.Ct. at 25, 606 N.E.2d at 928. The Debtor has failed to prove that the Bank was not honest in its dealings with the Debtor or that it purposefully injured the Debtor's right to obtain the benefits of her contractual relationship with the Bank. *See F.D.I.C. v. Smith*, 848 F.Supp. 1053, 1060 (D.Mass.1994); *Wayman*, 34 Mass.App.Ct. at 25, 606 N.E.2d at 928; *Blais*, 1993 Mass.App. Div. 213, at n. 2. In short, there has been no showing of any action by the Bank amounting to bad faith.

## III. *Conclusion*

In accordance with the foregoing, the Court will enter a declaratory judgment that the foreclosure sale conducted by the Bank was valid, and will enter judgment for the Bank on the Debtor's counterclaim. In addition, as to the Debtor's cross-claim against the Commonwealth, the Court will direct the Clerk of this Court to enter a Notice of Default for failure to plead or otherwise defend in this action as required by Fed. R.Bankr.P. 7012(a), to serve that Notice on the Commonwealth and, in the absence of any action by the Commonwealth over the

next ten (10) days, to enter a default judgment against the Commonwealth.

With the Commonwealth and the United States having apparently disclaimed any interest in the Surplus Funds, with the Trustee having been defaulted for failure to answer the complaint, with Deep, as the buyer of the property at the foreclosure sale, having no interest in the Surplus Funds, and with the Bank having waived in open court any entitlement to payment for the costs of bringing this action, the Bank will be ordered to pay the Surplus Funds, plus any accrued interest, to the Debtor. A separate Judgment will issue in conformity with this Memorandum.

### JUDGMENT

For the reasons set forth in this Court's separate Memorandum of Decision of even date, the Court takes the following action:

1. Judgment is entered solely for the defendant Sharon E. Greenberg on the Complaint for Interpleader filed by Adams Cooperative Bank (the "Bank"). The Bank is ordered to pay the surplus funds, in the amount of $6,923.45 plus any accrued interest, resulting from the foreclosure sale of the property located at 75 Hill Province Road in Williamstown, Massachusetts to Sharon E. Greenberg;

2. A declaratory judgment is entered that the foreclosure sale of the property located at 75 Hill Province Road in Williamstown, Massachusetts conducted by the Bank was validly conducted and is confirmed and approved;

3. Judgment is entered for the Bank as third party defendant on the counterclaims of Sharon E. Greenberg regarding the application of the prepayment of $22,500 made by Sharon E. Greenberg on the first mortgage held by the Bank;

4. The request of Michael Deep, in his capacity as trustee of Hill Province Realty Trust, to dismiss the Complaint for Interpleader as to him is granted;

5. The Clerk of this Court is ordered to enter a Notice of Default against the Commonwealth of Massachusetts on the cross-claim of Sharon Greenberg. In the absence of any action by the Commonwealth over the next ten (10) days, the Clerk of this Court is ordered to enter a default judgment against the Commonwealth.

6. The Clerk of this Court is ordered to enter a default judgment against Jack E. Houghton, Jr., the Chapter 7 Trustee, on the Complaint for Interpleader.