In re Sharon E. GREENBERG and
Edward H. Greenberg, Debtors.

Adams Co–Operative Bank,
Plaintiff/Appellee,

v.

Sharon E. Greenberg,
Defendant/Appellant.

BAP Nos. MW97–077, MW97–078.

United States Bankruptcy Appellate Panel
of the First Circuit.

Feb. 3, 1999.

Sharon E. and Edward H. Greenberg, Williamstown, MA, debtor—appellant pro se.

Timothy Morey, North Adams, MA, for Adams Co–Operative Bank, plaintiff—appellee.

Jack E. Houghton, Jr., Pittsfield, MA, for Jack E. in his Capacity as Bankruptcy Trustee, Jr., trustee—appellee.

Henry J. Riordan, U.S. Department of Justice, Tax Division, Washington, DC, for United States of America, Internal Revenue Service, defendant—appellee.

Karen L. Paino, Commonwealth of Massachusetts Collections Bureau, Bankruptcy Unit, Boston, MA, for Department of Revenue, defendant—appellee.

Fred Thompson, North Adams, MA, for Michael in his Capacity as Trustee of Hill Province Realty Trust, U.S. Trustee, defendant—appellee.

Before: HAINES, VAUGHN and CARLO, U.S. Bankruptcy Judges.

PER CURIAM.

Sharon E. Greenberg ("Greenberg") appeals two orders of the court below. Her first appeal challenges the bankruptcy court's entry of summary judgment declaring that Adams Co-operative Bank's ("Adams") foreclosure and sale of Greenberg's real estate at 75 Province Road in Williamstown, Massachusetts, pursuant to its second mortgage, was valid. (BAP No. MW 97–077). Greenberg also appeals the bankruptcy court's refusal to reconsider its judgment, entered after trial, rejecting her claims that Adams misapplied a $22,500 prepayment Greenberg had made on her first mortgage obligation. (BAP No. MW 97–078).

## JURISDICTION

The bankruptcy court's entry of judgment for Adams is a final judgment, providing us with jurisdiction pursuant to 28 U.S.C. §§ 158(a) and (b).

## STANDARD OF REVIEW

Because the bankruptcy court entered summary judgment declaring Adams' foreclosure of its second mortgage valid, we review that order *de novo* pursuant to the pertinent procedural rules and circuit law. *See* Fed.R.Civ.P. 56(c); Fed.R.Bankr.P. 7056(c); *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir.1998); *Weiss v. Blue Cross/Blue Shield of Delaware*, 206 B.R. 622, 624 (1st Cir. BAP 1997) (cases reciting *de novo* standard for appellate review of summary judgment).

As to the matters that proceeded to trial, we review the bankruptcy court's conclusions of law de novo. See Servicios Comerciales Andinos, S.A. v. General Electric Del Caribe, Inc., 145 F.3d 463, 469 (1st Cir. 1998) (citing Exxon Corp. v. Esso Workers' Union, Inc., 118 F.3d 841, 844 (1st Cir.1997)). Findings of fact may not be set-aside unless clearly erroneous. See Fed.R.Bankr.P. 8013; Servicios Comerciales Andinos, S.A., 145 F.3d at 469. "[D]ue regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed. R.Civ.P. 52(a). See also Servicios Comerciales Andinos, S.A., 145 F.3d at 469 (citing La Esperanza De P.R., Inc. v. Perez Y Cia, De Puerto Rico, Inc., 124 F.3d 10 (1st Cir. 1997)). " 'We will conclude that a finding is clearly erroneous only when, after reviewing the entire record, we are left with the definite and firm conviction that a mistake has been committed.' " Servicios Comerciales Andinos, S.A., 145 F.3d at 469 (1st Cir.1998) (quoting Strahan v. Coxe, 127 F.3d 155, 172 (1st Cir.1997)). Mixed questions of law and fact are reviewed "along a degree-of-deference continuum, ranging from plenary review for law-dominated questions to clear-error review for fact-dominated questions." Johnson v. Watts Regulator Co., 63 F.3d 1129, 1132 (1st Cir.1995). Accord Servicios Comerciales Andinos, S.A., 145 F.3d at 469; Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 661 (1st Cir.1997).

## FACTUAL AND PROCEDURAL BACKGROUND

On September 30, 1980, Greenberg and her spouse granted Adams a first mortgage on the Williamstown real estate to secure a $100,000.00 purchase money loan. They later granted Adams a second mortgage to secure a $50,000.00 home equity loan. Although Mr. Greenberg was obligated on the loans, the real estate was titled in Greenberg's name only.

On November 9, 1993, Greenberg filed a petition under Chapter 13 of the Bankruptcy Code. On September 29, 1994, the case was converted to Chapter 7 at Greenberg's request. On November 2, 1994, Adams obtained relief from the automatic stay to conduct a foreclosure sale on its second mortgage. Adams and Greenberg stipulated that the bank would conduct the sale in conformity with General Industries, Inc. v. Shea (In re General Industries, Inc.), 79 B.R. 124 (Bankr.D.Mass.1987) and the order granting relief from stay reflected that agreement.

Adams advertised the sale extensively in three newspapers and convened the sale on June 28, 1995. Adams disclosed the existence and amount of its first mortgage to prospective purchasers. Nine bidders, each of whom made qualifying deposits of $5,000, appeared. The property sold for $180,321.42, resulting in a surplus. Adams filed an adversary complaint for interpleader, asking the court to determine who was entitled to the surplus. It also sought a declaration that the foreclosure sale was valid.

Greenberg, appearing pro se, filed pleadings designated as counterclaims, crossclaims, and third party complaints against several of the parties, including Adams. She claimed that the foreclosure was defective and invalid, asserting that the sale advertising was excessive; that Adams' disclosure of the first mortgage to potential bidders chilled bidding; that the price obtained was too low; and that Adams had failed to provide notice of the sale to Mr. Greenberg. Greenberg also alleged that a prepayment on her first mortgage of $22,500, made on September 21, 1982, had been misapplied because she had not agreed to the treatment Adams gave it and because Adams failed to advise her of the relative advantages and disadvantages of the ways her prepayment could have been treated.

The bankruptcy court found against Greenberg on all of her claims. Greenberg sought reconsideration of the bankruptcy court's Memorandum of Decision and Judgment and the bankruptcy court denied Greenberg's motion.

Greenberg challenges the bankruptcy court's determination that the foreclosure sale was valid on several fronts. First, she asserts that Adams violated the requirements of Mass.Gen.Laws ch. 244, § 14 when it failed to notify her spouse of the foreclosure sale and when it indicated that the sale

was subject to liens of record, including its own first mortgage. She also claims the sale must fall because Adams failed to receive reasonably equivalent value for the real property it sold.

She also appeals the bankruptcy court's conclusion that Adams properly applied her prepayment. For the first time on appeal, she argues that Adams violated duties to her in failing to advise her regarding advantageous alternatives for the payment's application. In addition, and for the first time on appeal, Greenberg argues that Adams violated 42 U.S.C. § 1983 by singling her out for different treatment than previously used with other bank customers. Greenberg also argues that the bankruptcy court exhibited bias against her as a *pro se* litigant. Finally, she argues that the bankruptcy court did not properly consider her motion for reconsideration before denying it.

*Decisions Below*

*Summary Judgment on the Foreclosure Issues.* The issues related to the foreclosure sale were resolved by the bankruptcy court at a hearing held on March 31, 1997. The bankruptcy court granted Adams' motion for summary judgment and/or to dismiss counterclaims, except as to issues surrounding the $22,500 prepayment. The bankruptcy court noted that Greenberg had filed an affidavit related to the $22,500 prepayment. The court stated: "[i]nsofar as [Greenberg] did not respond by affidavit with respect to the other issues filed in the bank's motion for summary judgment, her opposition is defective, and I would specifically draw attention to a decision I authored entitled … *In re Aero–Fastener* at 177 B.R. 120, 1994." Trial Transcript, March 31, 1997 at 53–54.

In accordance with summary judgment requirements, the court went on to consider whether Adams' unchallenged submissions demonstrated its entitlement to judgment as a matter of law. In the course of doing so, it rejected each of Greenberg's legal arguments. It determined that Adams was not required to realize any particular sum at foreclosure, citing the Supreme Court's holding that the price obtained at a regularly conducted non-collusive sale conducted in accordance with state law constitutes "reason-

ably equivalent value" within the meaning of federal fraudulent transfer law. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (construing Bankruptcy Code § 548). Adams' agreement to conduct the sale in accordance with *In re General Industries, Inc.* bound it only to conduct the foreclosure sale in a "commercially reasonable manner" with respect to the auction. Putting aside Greenberg's challenges to the bank's appraisal and complaints about the price obtained, the court, relying on *Edry v. Rhode Island Hospital Trust National Bank (In re Edry)*, 201 B.R. 604 (Bankr.D.Mass.1996), concluded that its inquiry should focus instead on such factors as the adequacy of advertising and regularity of sale procedures. Trial Transcript, March 31, 1997 at 58. The court rejected Greenberg's argument that Adams' opening bid was too low, stating that "[b]y no stretch of the imagination can any Massachusetts case, in my view, be read to hold that the bank must bid more than the amount that it is owed in order to preserve the integrity of the sale." Trial Transcript, March 31, 1997 at 58.

With respect to noticing the sale to Greenberg's spouse, the court stated "I have previously ruled in this case in writing that that notice was not required because Mr. Greenberg did not have an interest in the property. He had a share of the debt, not a share of the asset. If proper notice was not given to Edward Greenberg, the bank might have some difficulty collecting a deficiency judgment against him, but that's irrelevant in this case. First there was no deficiency, and second, any deficiency would have been discharged." Trial Transcript, March 31, 1997 at 58–59.

Reviewing Adams' summary judgment papers, the court concluded that Adams had demonstrated that its pre-sale advertising was reasonable in all respects. Trial Transcript, March 31, 1997 at 57–60. Finally, the court determined that Adams appropriately indicated in the sale advertising that the property was being sold subject to the first mortgage. Trial Transcript, March 31, 1997 at 60.

*The Prepayment Issues.* The court held hearings on May 27 and 28, 1997, regarding

application of the $22,500 prepayment. In a published decision, the bankruptcy court concluded that Adams properly applied Greenberg's $22,500 first mortgage prepayment pursuant to an "Agreement for Changes on Direct Reduction Mortgage" it had entered into with Greenberg. *See Adams Cooperative Bank v. Greenberg (In re Greenberg),* 212 B.R. 422 (Bankr.D.Mass.1997).[1] The court concluded that Adams owed Greenberg no fiduciary duty (or implied duty of good faith and fair dealing) to advise her of the relative benefits and detriments of the different ways in which the prepayment could be applied to her loan obligation.

## DISCUSSION

### I. Validity of Foreclosure Sale

We agree that Greenberg's inadequate opposition to Adams' summary judgment motion eliminated her ability to generate factual issues warranting trial. *See* Fed.R.Civ.P. 56(e) (made applicable to adversary proceedings pursuant to Fed.R.Bankr.P. 7056); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Aero-Fastener, Inc, v. Sierracin Corp. (In re Aero-Fastener, Inc.),* 177 B.R. 120, 135 (Bankr.D.Mass.1994). Nonetheless, the bankruptcy court appropriately considered Adams' entitlement to judgment as a matter of law on the facts it presented in support of its motion. In so doing it necessarily considered and rejected Greenberg's legal arguments. Its conclusions were straightforward and unexceptional. We will treat them but briefly.

### A. Notice of Sale

■ Mr. Greenberg was a co-signor on the mortgage loan and promissory note, but the property was titled in Greenberg's name alone. The bankruptcy court concluded that Adams did not run afoul of Massachusetts laws when it failed to provide individualized

notice of the sale to Mr. Greenberg. It reasoned that:

> While Mr. Greenberg was obligated on the debt, he did not have any interest in the Property itself. Although the failure to give Mr. Greenberg notice might have affected the Bank's ability to collect a deficiency from him on the second mortgage loan, that issue is irrelevant because first, there was no deficiency, and second, even if there was a deficiency, it would have been discharged in the bankruptcy case. In any event, the failure to provide notice to Mr. Greenberg would not have affected the validity of the foreclosure sale under Massachusetts law. *See* Mass.Gen.Laws ch. 244, § 14.

*In re Greenberg,* 212 B.R. at 426 n. 6.

Under Massachusetts law, notice of a foreclosure by power of sale must be provided to the "owner or owners of record of the equity of redemption." Mass.Gen.Laws ch. 244, § 14. The mortgagee need only "give notice of the sale to the mortgagor and to others having recorded interests in the property." *In re General Industries, Inc.,* 79 B.R. at 132 (citing Mass.Gen.Laws ch. 244, § 14). Mr. Greenberg had no recorded interest in the property. The court below correctly determined that Adams followed proper noticing procedures for its sale.

### B. Conduct of Sale

Greenberg argues that *In re General Industries, Inc.* established that a mortgagee is required to create a market for a property at a foreclosure sale and to obtain a "reasonably equivalent value" for the property, which she argues is 70% of the assessed value.[2]

■ The bankruptcy court held that inadequacy of the price alone was not a basis for setting aside the foreclosure sale. Trial Transcript, March 31, 1997 at 58. We agree.

---

1. In addition to articulating its decision on the prepayment application issues, the court's opinion reiterated the bases for its summary judgment determinations. *In re Greenberg,* 212 B.R. at 426.

2. Into this argument, Greenberg incorporates her criticisms of Adams's appraisal, asserting that the appraisal is too low, failing to account

for the value of the land on which her home sat. She claims that the unreasonably low appraisal somehow infected sale procedures and resulted in an inadequate sale price. Because we reject her arguments regarding the sales price's adequacy, we need not address the appraisal issue separately.

The point is now so well-settled that it hardly bears discussion. We can add little to the bankruptcy court's careful discussion of the point that such a minimum percentage rule was not adopted by *In re General Industries Inc.*, 79 B.R. at 130–31, and was subsequently rejected soundly by the United States Supreme Court. *See BFP v. Resolution Trust Corp.*, 511 U.S. at 543 & n. 7, 114 S.Ct. 1757.

▋ In the present case, Adams agreed to follow *In re General Industries, Inc.* which only required it to conduct a commercially reasonable sale. Adams' summary judgment filings demonstrated that it exerted commercially reasonable efforts in advertising and conducting the sale. Its efforts attracted to the sale nine qualified bidders, each of whom posted a $5,000 deposit. This panel concludes, as did the bankruptcy court, that the foreclosure sale was conducted in a commercially reasonable manner.[3]

### C. Disclosure of First Mortgage Lien

▋ Greenberg alleges that the bankruptcy court erred in concluding that Adams permissibly sold her home "subject to the liens of record," including Adams' own first mortgage lien. The court found that there was nothing objectionable in the bank's action. It stated "[t]o one end it is a courtesy to the buyer. To the other end it is a protection for everyone against the claim— against the future claim by a buyer that it was somehow misled and thought it was bidding on something else. Those kinds of disputes result in litigation and frequently lead to a reduction of the amount recoverable as a result of the foreclosure." Trial Transcript, March 31, 1997 at 60. We agree.

Pertinent Massachusetts statutes include a suggested form of foreclosure notice that provides for a description of the property "as in the mortgage, including all references to title, restrictions, encumbrances, etc., as made in the mortgage." Mass.Gen.Laws. ch. 244, § 14. The statute provides that:

> [a] notice of sale in the above form, published in accordance with the power in the

mortgage and with this chapter, together with such other or further notice, if any, as is required by the mortgage, shall be a sufficient notice of the sale; and the premises shall be deemed to have been sold, and the deed thereunder shall convey the premises, subject to and with the benefit of all restrictions, easements, improvements, outstanding tax titles, municipal or other public taxes, assessments, liens or claims in the nature of liens, and existing encumbrances of record created prior to the mortgage, whether or not reference to such restrictions, easements, improvements, liens or encumbrances is made in the deed; but no purchaser at the sale shall be bound to complete the purchase if there are encumbrances, other than those named in the mortgage and included in the notice of sale, which are not stated at the sale and included in the auctioneer's contract with the purchaser.

*Id.* The procedures Adams employed were entirely compatible with Massachusetts law. *See Bernstein v. Shain*, 263 Mass. 188, 160 N.E. 671 (Mass.1928) (sale notice that fails to indicate the encumbrances as made in the mortgage is voidable). The bankruptcy court correctly concluded that Adams permissibly disclosed the existence of the its mortgage in the course of foreclosure.

### II. Application of Prepayment

Greenberg implicitly denies signing the "Agreement for Changes on Direct Reduction Mortgage." She claims that her signature appeared differently in 1982 than what appears on the agreement and that her husband would have been the one to determine how the prepayment should be applied.

▋ Massachusetts law provides that where the authenticity of a signature is at issue, the party claiming under the signature has the burden to establish its genuineness. *See* Mass.Gen.Laws ch. 106, § 3–307(1)(a). The bankruptcy court found as a fact that Greenberg had signed the Agreement for Changes. *See in re Greenberg*, 212 B.R. at 428. There was ample evidence from which the bankruptcy court could reach this conclu-

---

**3.** We expressly reject Greenberg's inconsistent argument that the advertising engaged in by

Adams was excessive and that it had the effect of "chilling" the sale price.

sion. The president of Adams testified that, although fifteen years later he did not specifically remember witnessing Greenberg's signature, that he had never witnessed a document without the person being present and signing the document in front of him. Trial Transcript, May 27, 1997 at 20. The president also testified that he recognized Greenberg's signature on the document, as well as the signatures of three other Adams' employees, two who are deceased. Trial Transcript, May 27, 1997 at 21–23. Another Adams' employee, who had been the assistant manager at Adams, had also witnessed Greenberg's signature. While the employee did not remember witnessing this particular document, she testified that she had never witnessed a document without a signature on it. Trial Transcript, May 27, 1997 at 58.

The bankruptcy court's judgment was founded partially upon its credibility determinations, although it found even the testimony of the bank's witnesses "of little real help." *In re Greenberg,* 212 B.R. at 427. More importantly, the court based its finding that Greenberg had signed the agreement on its own comparison of the signature on the Agreement for Changes and other authenticated signatures produced by Greenberg herself. Its doing so is expressly provided for in the Federal Rules of Evidence. *See* Fed. R.Evid. 901(b)(3). The finding is not clearly erroneous.

■ The bankruptcy judge thoroughly discussed, and correctly rejected, Greenberg's contention that the bank owed her fiduciary duties in connection with proposed applications of her first mortgage prepayment. *In re Greenberg,* 212 B.R. at 428–29. We need not carry water to that well.

■ The bankruptcy court likewise rejected Greenberg's argument that Adams violated its covenant of good faith and fair dealing by failing to disclose which method of applying the prepayment would be most beneficial to her. The court stated that:

> [S]uch a duty upon a bank would be most impractical. Applying a prepayment in a fashion best suited for a borrower is entirely dependent on both the borrower's preferences and financial circumstances.

> For instance, one borrower might prefer or require lower monthly payments while another might prefer to keep higher monthly payments in order to pay off the loan sooner.

*In re Greenberg,* 212 B.R. at 429. As did the bankruptcy court, we also conclude that Adams was under no obligation to explain which prepayment option would be most beneficial to Greenberg and thus the failure to explain the options could not violate Adams' duty of good faith and fair dealing. Greenberg presented no evidence that Adams was dishonest in its dealings with her.

### III. 1983 Claim

The First Circuit has stated that:

> It is the general rule in this circuit that arguments not raised in the trial court cannot be raised for the first time on appeal. *See, e.g., Boston Celtics Ltd. Partnership v. Shaw,* 908 F.2d 1041, 1045 (1st Cir.1990); *Brown v. Trustees of Boston Univ.,* 891 F.2d 337, 359 (1st Cir.1989), cert. denied, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). Like other circuit courts of appeals, however, we have recognized that an appellate court has the discretion, *in exceptional circumstances,* to reach issues not raised below. *See United States v. La Guardia,* 902 F.2d 1010, 1013 (1st Cir.1990). In *United States v. Krynicki,* 689 F.2d 289, 291–92 (1st Cir.1982), we outlined the criteria for determining the appropriate exercise of our discretion to hear new issues. These criteria include, *inter alia,* whether the new issue is purely legal, such that the record pertinent to the issue can be developed no further; whether the party's claim appears meritorious; whether reaching the issue would promote judicial economy because the same issue is likely to be presented in other cases; and whether declining to reach the argument would result in a miscarriage of justice. *Id.*

*Capitol Bank & Trust Co. v. 604 Columbus Ave. Realty Trust (In re 604 Columbus Ave. Realty Trust),* 968 F.2d 1332, 1343 (1st Cir. 1992) (emphasis added). Greenberg has mustered no showing of exceptional circumstances to precipitate our discretionary re-

view of her novel theory. We pass the point without further discussion.

## IV. Bankruptcy Court Bias

Greenberg complains that the bankruptcy court exhibited "attitude" and a lack of patience with her in hearings and at trial. Yet, she has identified no resulting error susceptible to appellate review. Nonetheless, to avoid overlooking judicial abuse, we have carefully reviewed the transcripts. The record discloses that the bankruptcy court went out of its way to assist Greenberg in presenting her case, while maintaining order in the proceedings and complying with applicable procedural rules. Simply stated, the record is utterly devoid of support for Greenberg's contention that the bankruptcy court exhibited bias toward her.

## V. Motion for Reconsideration

■ Greenberg contends that the bankruptcy court failed to properly consider her motion for reconsideration. She argues that the bankruptcy court denied the motion too quickly and offered no reasons to support its action. We see no error. Greenberg's motion raised no new issues. The court, having previously explained its findings and conclusions, was not duty-bound to repeat itself. *See In re Sun Pipe Line Co.*, 831 F.2d 22, 25 (1st Cir.1987) (abuse of discretion review of motions to reconsider); *Neal Mitchell Assocs. v. Braunstein (In re Lambeth Corp.)*, 227 B.R. 1, 7 (1st Cir. BAP 1998) (same).

### *Conclusion*

For the reasons set forth above, the bankruptcy court's judgment in favor of Adams Cooperative Bank is AFFIRMED. The bankruptcy court's denial of the debtor's motion for reconsideration is likewise AFFIRMED.