# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

-----

## BAP NOS. PR 99-029 and PR 99-057

-----

**In re: RAMON A. PABON RODRIGUEZ and**
**ELSA IRIS MEDINA LANDIN,**
**Debtors.**

-----

**RAMON LOPEZ JIMINEZ, CELESTINO LOPEZ JIMINEZ,**
**MANUAL DE JESUS RAMOS RAMOS, MARIA DE LOURDES RAMIREZ MUNIZ,**
**AND THE CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, and**
**HAYBOT JESUS RAMOS RAMOS,**
**Appellants,**

**v.**

**RAMON A. PABON RODRIGUEZ,**
**ELSA IRIS MEDINA LANDIN, and**
**RICHARD A. LEE, TRUSTEE,**
**Appellees.**

-----

**Appeal from the United States Bankruptcy Court**
**for the District of Puerto Rico**
**(Hon. Enrique S. Lamoutte, U.S. Bankruptcy Judge)**

-----

**Before**
**VOTOLATO, Chief Judge, VAUGHN and DEASY, U.S. Bankruptcy Judges.**

-----

Miguel E. Bonilla Sierra for Appellants.

Antonio Fiol Matta for Appellees.

-----

**August 21, 2000**

-----

**PER CURIAM.**

## I.  INTRODUCTION

Before the panel are two appeals filed by Ramon Lopez Jiminez, Celestino Lopez Jiminez, Manual De Jesus Ramos Ramos and Maria De Lourdes Ramirez Muniz and the conjugal partnership constituted between them, and Haybot Jesus Ramos Ramos (collectively, the "Appellants") of bankruptcy court orders denying (1) their motion for reconsideration of the judgment entered in favor of Ramon A. Pabon Rodriguez and Elsa Iris Medina Landin (the "Debtors") and Richard A. Lee, Trustee (the "Trustee" and, collectively, with the Debtors, the "Appellees"); (2) their motion to consider the Appellants' reply to the Trustee's motion for summary judgment; (3) their motion to treat the motion for reconsideration as a motion under Rules 59 and/or 60 of the Federal Rules of Civil Procedure; and (4) their motion under Rule 60(b)(3) of the Federal Rules of Civil Procedure to vacate the bankruptcy court's judgment.  For the reasons set forth below, we affirm.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The Appellants own properties that adjoin property owned by the Debtors.  Sometime during the late 1980s or early 1990s, disputes erupted between the Appellants and the Debtors as to who owned land north of the Appellants' properties.  To fully understand the dispute between the parties, it is necessary to

review the history of ownership of the real property at issue as well as the procedural posture of the litigation that has ensued since 1991.

## A. Appellants' Properties

On April 24, 1942, Mamerto Lopez Ruiz and his wife purchased land in Aguada, Puerto Rico, known as Estate No. 572, which consisted of 8.96 cuerdas.[1]  In 1963, after Ruiz's wife passed away, the couple's three children, Altagracia, Nicasio, and Celestino, recorded their hereditary title to one-half of the property.[2]  On June 14, 1963, Ruiz and his three children reduced the area of Estate No. 572 to 5.44 cuerdas in accordance with the requirements of Puerto Rico law.[3]  The record supports a finding that 1.084 cuerdas were used to construct a state road and that the balance of the reduction occurred as the result of a surveyor's certification that the remaining property actually consisted of only 5.44 cuerdas.

---

[1] "Cuerdas" is a Spanish word for a unit of area for which there is no English translation.  At oral argument the parties indicated that a cuerdas is slightly smaller than an acre.

[2]  Puerto Rico law requires that "hereditary rights" be recorded in Puerto Rico's property registry.  See 30 L.P.R.A. § 2201.

[3] The Puerto Rico Mortgage and Property Registry Act provides a mechanism, known as "rectification," in order to resolve "any disagreement on recordable rights which may exist between the Record and the legal reality outside the Registry."  30 L.P.R.A. § 2360. According to the statute, "[r]ectification of the Registry may be requested by the titleholder of dominion or real right which is not recorded, which is recorded erroneously, or which is impaired by the inaccurate entry."  Id.

On November 13, 1964, Ruiz and his children partitioned their interest in Estate No. 572 as follows:

    a.    1.82 cuerdas were transferred to Altagracia, reducing Estate No. 572;

    b.    1.82 cuerdas were transferred to Nicasio, creating Estate No. 2072; and

    c.    1.80 cuerdas were transferred to Celestino, creating Estate No. 2073.

Ruiz retained an interest in the building situated on Estate No. 572.

On October 22, 1966, Celestino sold Estate No. 2073. The property was subsequently transferred several times during the next two decades. On May 10, 1986, Manual De Jesus Ramos Ramos and Haybot Jesus Ramos Ramos, two of the Appellants, obtained title to Estate No. 2073 through their parents' donation. On January 16, 1967, a few months after Celestino sold Estate No. 2073, Altagracia sold Estate No. 572 to Celestino.

On November 16, 1976, Nicasio attempted to increase the area of Estate No. 2072 from 1.82 cuerdas to 2.646 cuerdas. Pursuant to Puerto Rico law, the registrar of property permitted an increase to 2.18 cuerdas (or by twenty percent) based upon a survey and measurement by a licensed surveyor.[4]

_____

[4]   Puerto Rico law provides:

Rectification of the size of all properties already recorded may be entered in the Registry by any of the following means:

First: By an unappealable verdict handed down in a regular procedure of judicial survey or to establish the dimensions.

Second: By a public document when it is a question of

3

At all times relevant to the litigation described below, Celestino, Nicasio, and the Ramoses held title to Estates No. 572, 2072, and 2073, respectively.

**B. Debtors' Property**

On December 27, 1985, the Debtors purchased property in Aguada, Puerto Rico, known as Estate No. 1169, from Nicolas de Cardona and his wife, Clementina Yumat. This property borders Estates No. 572, 2072, and 2073 on the south, which property is owned by Celestino, Nicasio, and the Ramoses, respectively. The deed into the Debtors recited that Estate No. 1169 was recorded at the registry with an area of 72.10 cuerdas, but that the correct area, pursuant to a land survey, was 91.6 cuerdas. Under the terms set forth in the deed, the sellers became obligated to rectify the recorded area by instituting the appropriate proceedings.[5] The sellers failed to do so. As a result, the Debtors agree that they have record title to only 72.10 cuerdas.

On March 20, 1993, Julio Cajigas prepared a survey of Estate No. 1169 for the Debtors that showed that the Debtors' property

---

reduction of the area or an excess of no more than twenty percent of the recorded area, and it is done by proven technical surveying methods, in accordance with the provisions of section 2765 of this title.

Third: By means of judicial proceedings to record a title in fee simple for the entire excess when it is more than twenty percent. In this case the immediate former owner shall be summoned even though he has conveyed the property by public document.

30 L.P.R.A. § 2772.

[5] See footnotes 3 and 4 supra.

4

consists of 69.103 cuerdas, <u>excluding</u> the area over which there currently is a dispute with the Appellants, or 2.997 cuerdas short of the 72.10 cuerdas recorded with the registry and recited in the deed to the Debtors.

**C. Litigation**

In 1991, Celestino brought an action in the Puerto Rico courts against the Debtors seeking to obtain recordable title to certain land north of his property, Estate No. 572. In 1993, Nicasio brought a similar action with respect to his property, Estate No. 2072. In 1996, the Ramoses brought a third action against the Debtors seeking to obtain title to land north of their property, Estate No. 2073.

On May 9, 1995, the Debtors filed a bankruptcy petition under Chapter 13. On August 15, 1996, the bankruptcy case was converted to Chapter 11. On October 21, 1996, a Chapter 11 trustee was appointed. After his appointment, the Trustee removed the state court cases filed by the Appellants to the bankruptcy court, and on March 7, 1997, all three matters were consolidated.

On September 5, 1997, the Trustee filed a motion for summary judgment claiming that the Debtors own the property at issue and that the Appellants were estopped by their own acts from claiming a right to the property in controversy. The Appellants missed the September 16, 1997 deadline for filing a response to the

5

motion for summary judgment.[6]  On December 3, 1997, the bankruptcy court granted the Trustee's unopposed motion by endorsing it in the margin.

On December 12, 1997, after the bankruptcy court granted the Trustee's motion, the Appellants filed a late response to the motion for summary judgment.  On December 29, 1997, the bankruptcy court entered a judgment dismissing the Appellants's claims and holding that the Debtors had title to the disputed property.  On January 7, 1998, the Appellants filed a motion to reconsider the bankruptcy court's December 3, 1997 order and to vacate the December 29, 1997 judgment.  On January 13, 1998, the Appellants filed another motion requesting that the bankruptcy court consider its late response to the motion for summary judgment.

The bankruptcy court issued an opinion and order on March 2, 1999 denying the Appellants' requests to reconsider its December 3, 1997 order, to vacate its December 29, 1997 judgment, and to consider their opposition to the motion for summary judgment.  On March 11, 1999, the Appellants appealed the bankruptcy court's December 3, 1997 order granting summary judgment and its March 2, 1999 opinion and order denying their motions to reconsider and vacate.

---

[6]  The Appellants claim they filed a motion for an extension of time to respond to the motion which was never acted upon by the bankruptcy court.  The bankruptcy court has no record of ever having received such a motion, either orally or in writing.

While their case was pending on appeal, the Appellants filed a motion under Rule 60(b)(3) of the Federal Rules of Civil Procedure on May 6, 1999 with the bankruptcy court seeking relief from the court's judgment. They argued that the survey relied upon by the Trustee in his motion for summary judgment was false and misleading. On July 2, 1999, the bankruptcy court issued an opinion and order denying the motion for relief from judgment. The Appellants appealed that order on July 8, 1999. The Bankruptcy Appellate Panel consolidated the Appellants' two appeals on August 11, 1999. The Panel heard oral argument on May 4, 2000.

## III. DISCUSSION

On appeal, the Appellants challenge the bankruptcy court's orders and judgment that (1) granted relief in favor of the Trustee; and (2) denied the Appellants' requests for reconsideration and for relief from judgment. Specifically, the Appellants argue on appeal that (1) the bankruptcy court erred in granting summary judgment in favor of the Appellees; (2) the bankruptcy court erred in failing to consider the Appellants' reply to the motion for summary judgment and in failing to vacate the order granting summary judgment pursuant to Federal Rules of Civil Procedure 59 and/or 60; and (3) the bankruptcy court abused its discretion when it denied the Appellants' motion under Federal Rule of Civil Procedure 60(b)(3).

7

**A. SUMMARY JUDGMENT**

In his motion for summary judgment, the Trustee requested that the Court determine that the Debtors and their bankruptcy estate hold title to the property in controversy. The Court granted the motion on December 3, 1997; however, the bankruptcy court's reason for granting the Trustee's motion was not stated in its order. Rather, the order merely recited: "Granted. No opposition filed. Judgment shall be entered."

The standard for appellate review of an order granting or denying summary judgment is <u>de</u> <u>novo</u>. See <u>Printy v. Dean Witter Reynolds, Inc.</u>, 110 F.3d 853, 854 (1st Cir. 1997; <u>Adam Cooperative Bank v. Greenberg (In re Greenberg)</u>, 229 B.R. 544, 546 (B.A.P. 1st Cir. 1999). The appellate court must review the evidence in the light most favorable to the party against whom judgment was entered to determine whether there are genuine issues of material fact and whether the lower court correctly applied the law to the undisputed facts. See <u>McCrory v. Spigel (In re Spigel)</u>, BAP No. RI 00-109 (B.A.P. 1st Cir. July 13, 2000) (citing <u>Lemelle v. Universal Mfg. Corp.</u>, 18 F.3d 1268, 1272 (5th Cir. 1994)). "[S]ummary judgment should be bestowed only when no genuine issues of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." <u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760, 763 (1st Cir. 1994) (citing Fed. R. Civ. P. 56(c)).

8

"As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality—say, affidavits or depositions—that support his position." Id. "As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver 'an absence of evidence to support the nonmoving party's case.' . . . The burden of production then shifts to the nonmovant, who, to avoid summary judgment, must establish the existence of at least one question of fact that is both 'genuine' and 'material.'" Id. at n.1 (citations omitted). An inadequate opposition to a summary judgment motion can eliminate the objecting party's ability to raise factual issues warranting trial. See Greenberg, 229 B.R. at 548. The mere fact that a party has failed to file a timely opposition does not mean, however, that the movant's summary judgment motion should be granted. See Mendez v. Banco Popular de Puerto Rico, 900 F.2d 4, 7 (1st Cir. 1990). Rather, the court must make a determination that based on the uncontroverted, undisputed facts, the moving party is entitled to judgment in the movant's favor. Thus, while the absence of a dispute over material facts is a necessary condition for granting summary judgment, it is not a sufficient condition. See Varrasso, 37 F.3d at 764.

In the instant action, the Appellants sought to rectify the records of Puerto Rico's registry of property and "to obtain

9

recordable title to certain land north of their properties, which they claimed was part of the property each owned." Appellants' Brief at 3. In any action seeking to rectify the registry's records and/or to obtain recordable title to real property, the parties seeking relief must comply with Puerto Rico's Mortgage and Property Registry Act, 30 L.P.R.A. §§ 2051-2821. "The purpose of the Property Registry [of Puerto Rico] is the registration of transactions and contracts relating to real property through a public record system of titles containing acquisitions, modifications and extinctions of domain and other real rights on said property, and the recordable rights on same, and those judicial opinions which may affect the legal capacity of the owners of record." 30 L.P.R.A. § 2051.

The Mortgage and Property Registry Act "recognizes the fact that an inscription or recording may not reflect the real status of the property; therefore, . . . a process of rectification of inaccuracies is reserved for the benefit of 'the title holder of dominion or real right which is not recorded, which is recorded erroneously, or which is impaired by the inaccurate entry.' . . . [The statute] provides that when a required correction affects a third party's rights, the same can be accomplished if (a) the third party consents, or (b) a judicial order is entered to that effect." Juarbe Alicea v. Juarbe Auto Sales, Inc., 640 F. Supp. 110, 112 (D.P.R. 1986) (citations omitted); see 30 L.P.R.A. § 2502 ("When rectification might affect the rights of registered

10

titleholders, their consent or a judicial resolution ordering the rectification of the entries shall be required."); 30 L.P.R.A. § 2771 ("When the owner of a recorded property or of a real right on it does not appear as owner of record, he must bring a regular action against those appearing in the Registry as titleholders, and if he wins the lawsuit, the Court shall order a registration in the name of the plaintiff, and the cancellations which are in order."). Here, the Appellants sought not only to change the registry's records to reflect that the surface area of their property was larger but also to obtain recordable title to a portion of the Appellees' property. The Appellees objected claiming they own the property at issue and that the Appellants are estopped by their own acts from claiming any right to the property.

Pursuant to 30 L.P.R.A. § 2772, the only way to rectify each of the Appellants' properties is "by means of judicial proceedings" as the Appellants seek to increase their property by more than twenty percent.[7] Each of the Appellants brought a judicial proceeding in the Puerto Rico courts, and all three actions were removed by the Trustee to the bankruptcy court. As the parties seeking to change the registry's records and obtain title to registered property, the Appellants have the burden of proving that there was some inaccuracy in the registry's record, i.e., that there was a disagreement with respect to recordable

---

[7] See footnote 4 supra.

11

rights that existed between the record and the legal reality outside the registry. See 30 L.P.R.A. § 2360.

"In order to be recordable, titles . . . must appear in deeds, judgments or official documents issued by judicial authority or a competent official, in the manner prescribed by law and regulations, except in cases where the law establishes a different procedure." 30 L.P.R.A. § 2205. Here, the unopposed summary judgment record contains no evidence that would support a finding that the Appellants's alleged rights in the property appear in any "deeds, judgments or official documents" as required by the statute.

In support of his motion for summary judgment, the Trustee supplied the bankruptcy court with certified copies and translations of various deeds. In particular, he included copies of a deed executed on June 14, 1963 pursuant to which Ruiz and his three children, Altagracia, Nicasio, and Celestino rectified the area of Estate No. 572 from 8.96 cuerdas to 5.44 cuerdas. The Trustee further included two deeds executed on November 13, 1964 that partitioned Estate No. 572 into three smaller estates, two of which contained 1.82 cuerdas and the third of which contained 1.80 cuerdas, together totaling 5.44 cuerdas. The deeds indicated that, to the north, these properties bordered land owned by Nicolas Cardona, the person from whom the Debtors purchased Estate No. 1169 in 1985. The Trustee also attached to his motion additional deeds in which the Appellants continued to

12

recite that their properties contained fewer cuerdas than they now claim.[8]  The deeds also recite that the three properties bordered Cardona's property on the north.  It is undisputed that these deeds were all recorded with the registry of property in Puerto Rico.

> The Puerto Rico Mortgage and Property Registry Act provides:

> For all legal purposes, it shall be presumed that the recorded rights exist and belong to their titleholder in the form specified by the respective entry.  It shall also be presumed that the person who has recorded the ownership of the real properties or rights has possession thereof.  This assumption, as well as the preceding one, admits proof to the contrary, but the courts will take care that in a case of doubt as to possession, the recorded titleholder be recognized as the owner, subject to the actions that his contradictor can exercise in the corresponding regular proceedings.

30 L.P.R.A. § 2354.  The statute makes clear that in the instant case the Panel should presume that the Appellants and the Debtors have rights to property as recorded in the registry and that they have possession of the property.  Given this presumption and the lack of evidence in the unopposed summary judgment record that the Appellants hold title to the Debtors' property, the Trustee was entitled to judgment in his favor, i.e., that the Debtors and their bankruptcy estate are the owners of the property. Examining the summary judgment record in the light most favorable to the Appellants, the Panel finds that the record lacks any

---

[8] As indicated above, Nicasio did previously rectify the surface area of his property by twenty percent resulting in an increase to 2.18 cuerdas.  Despite this increase, Nicasio apparently was attempting to increase the size of his property even more in the bankruptcy proceeding.

basis upon which to find that the Appellants have legal title to the property.

## B.    LATE REPLY TO MOTION AND COURT'S REFUSAL TO VACATE ORDER

The bankruptcy court denied the Appellants' late reply to the motion for summary judgment as moot. Rules 311(5) and (12) of the Local Rules of the United States District Court for the District of Puerto Rico, as adopted and amended by Local Rules 7001(1) and (b)(1) of the United States Bankruptcy Court for the District of Puerto Rico, provide that a respondent has eleven days to oppose a motion for summary judgment after it is served. It is undisputed that the Appellants filed their reply eighty-seven days after it was due and nine days after the bankruptcy court ruled on the Trustee's motion for summary judgment. The Appellants concede that there is no valid explanation for their failure to comply with the established procedural requirements of the bankruptcy court. While it is unclear whether the Appellants are challenging the bankruptcy court's order denying their reply as moot, assuming that the Appellants are seeking review of that order, the Panel finds that the bankruptcy court acted properly in refusing to consider the reply. See Smith v. Severn, 129 F.3d 419, 425 (7th Cir. 1997) (holding that the district court did not abuse its discretion in refusing to consider a plaintiff's late response to a motion for summary judgment where the pleading was "a few months late" and "no good reason for the delay" was offered).

14

The Appellants challenge the bankruptcy court's denial of their motion requesting that the bankruptcy court consider their reply to the Trustee's motion and their motion for reconsideration as motions under Rules 59 and/or 60 of the Federal Rules of Civil Procedure.  As the bankruptcy court properly explained, a motion to reconsider is not among the motions recognized by the Federal Rules of Civil Procedure.  <u>See</u> Opinion dated March 2, 1999 at 9.  Rather, a motion so denominated, which challenges the prior judgment on the merits, should be treated as either a motion to alter or amend under Rule 59(e) or a motion for relief from judgment under Rule 60(b).  <u>See</u> <u>id.</u> at 9-10.

An appellate court reviews an order denying such a motion for abuse of discretion.  <u>See</u> <u>In re Sun Pipe Line Co.</u>, 831 F.2d 22, 25 (1st Cir. 1987), <u>cert. denied</u>, 486 U.S. 1055 (1988); <u>Salem Five Cents Sav. Bank v. Tardugno (In re Tardugno)</u>, 241 B.R. 777, 779 (B.A.P. 1st Cir. 1999); <u>Neal Mitchell Assocs. v. Braunstein (In re Lambeth Corp.)</u>, 227 B.R. 1, 7 (B.A.P. 1st Cir. 1998).  The First Circuit Court of Appeals has explained that "[a]buse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them."  <u>Tardugno</u>, 241 B.R. at 779 (quoting <u>Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.</u>, 864 F.2d 927, 929 (1st Cir. 1988)).

15

In the instant case, the bankruptcy court took painstaking effort to fully consider the arguments made by the Appellants in support of their motion for reconsideration (as well as some arguments the court assumed the Appellants were attempting to make). The Panel concludes that the bankruptcy court articulated sound reasons for denying the motion. As there was no abuse of discretion, the Panel affirms the bankruptcy court's order dated March 2, 1999 denying the Appellant's request to vacate the court's judgment.

## C. RULE 60(b)(3) MOTION

Rule 60(b)(3) allows a court to relieve a party from a final judgment, order, or proceeding on account of "fraud (whether heretofore deemed intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." A bankruptcy court's decision on a Rule 60(b)(3) motion is committed to the discretion of the court and may be reversed only upon a finding of an abuse of that discretion. See Ojeda-Toro v. Rivera-Mendez, 853 F.2d 25, 28 (1st Cir. 1988). In considering a Rule 60(b)(3) motion on appeal, the appellate court does not review the merits of the underlying judgment. See id.

To prevail under Rule 60(b)(3) in this case, the Appellants were required to show that they were prevented from fully and fairly presenting their defense to the summary judgment motion by the Trustee's alleged misconduct in presenting allegedly false and misleading evidence in the form of the Cajigas survey. See

16

In re M/V Peacock, 809 F.2d 1403, 1404-05 (9th Cir. 1987).  The Appellants argued in their motion that they were entitled to relief from judgment because the Appellees committed fraud and misrepresentation by submitting the Cajigas survey in support of their motion for summary judgment and by making false and misleading representations about the information contained in it. The Appellants argue that the Cajigas survey is inaccurate because it was prepared at the Debtors' request and in accordance with the boundaries set by the Debtors and because the adjoining property owners were not notified that the survey was being conducted.  The Appellants conclude that the bankruptcy court's judgment must be vacated because it is based on erroneous and misleading information submitted by the Appellees.

The Panel agrees with the bankruptcy court, for the reasons set forth in that court's opinion and order dated July 2, 1999, that the Appellants have failed to meet their burden under Rule 60(b)(3).  Specifically, the Appellants have failed (1) to establish that they would have a meritorious defense against the Appellees' motion for summary judgment; (2) to demonstrate by clear and convincing evidence that the Appellees engaged in fraud or misrepresentation; (3) to show that they were unaware of the facts upon which they now base their claim of fraud and misrepresentation at the time they responded to the Appellees motion for summary judgment; and (4) to exercise due diligence in obtaining the sworn statement of the surveyor.

17

Because the Appellants have failed to demonstrate how the Trustee's alleged misconduct interfered with their ability to prepare a defense to the motion for summary judgment, the Panel rules that the bankruptcy court did not abuse its discretion in determining that the Appellants could not rely on the Appellees' alleged misconduct in submitting the survey as a reason for relief from judgment under Rule 60(b)(3). Accordingly, the bankruptcy court's order dated July 2, 1999 denying the motion for relief from judgment is hereby affirmed.

## V. CONCLUSION

For the reasons outlined above, the bankruptcy court's order granting the Appellees' motion for summary judgment is AFFIRMED. The bankruptcy court's orders denying the Appellants' motions to reconsider and for relief from judgment are also AFFIRMED.

SO ORDERED.